2004 VT 85

**Gregory W. SOCHIN v. LeaAnn B. SOCHIN**

[861 A.2d 1089]

No. 03-237

¶ 1. August 25, 2004. Mother appeals from a divorce order of the Windham Family Court. She contends the court erred in: (1) setting a parent-child contact schedule with father that results in equal custodial time between the parties; (2) requiring that the parties stipulate to consistent parenting rules; (3) ordering that father be able to attend the child's medical appointments; (4) declining to award her spousal maintenance; and (5) declining to award her a share of the equity in the marital home. As to the first three contentions, we hold that the claims were rendered moot by a subsequent family court order modifying parental rights and responsibilities, and as to the fourth and fifth contentions we affirm.

¶ 2. The parties were married in 1991, and had one child, born in September 1998. Both parents worked as support staff at various restaurants and inns during the marriage. Following their separation, the parties entered into an interim stipulation, filed with the court in March 2002, providing for a shared custodial arrangement, father having the child from Thursday morning until noon on Sunday, mother from Sunday until Wednesday at 4:30 p.m., and alternating custody on Wednesdays from 4:30 p.m. until the following morning.

¶ 3. The court held a final hearing over two days in September 2002 and January 2003. Mother's initial request for findings, filed in September, proposed an award of shared physical and legal parental rights and responsibilities, and provided for a continuation of the contact

schedule in place under the interim stipulation. Mother filed a set of revised requests in early January 2003, however, seeking an award of sole legal and physical parental rights and responsibilities, and proposing to limit parent-child contact with father to three weekends per month. Although mother testified at the continued hearing in January that she wanted the shared contact schedule to continue, she was concerned that father's inconsistent parenting rules and lack of communication had made an award of primary rights and responsibilities necessary.

¶ 4. The court issued a final opinion and order in April 2003, awarding mother sole physical and legal parental rights and responsibilities, while maintaining the contact schedule under the interim stipulation. The court found, in this regard, that the parties' inability to agree to share parental rights and responsibilities required an award of sole rights and responsibilities to one of the parents. See 15 V.S.A. § 665(a) (when parties cannot agree to divide or share parental rights and responsibilities, court shall award them primarily or solely to one parent). Applying the relevant best interests criteria, id. § 665(b), the court further found that while both parents had provided the child with love and affection and were equally capable of providing for his material and developmental needs and a safe environment, mother's role as the primary parent impelled that she be awarded sole parental rights and responsibilities.

¶ 5. The court also found, however, that the child had "done very well under the temporary order," noting that his relationship with each parent was "marked by a deep, reciprocal love," that he was excelling in his preschool, and had received valuable support and security through regular contact with father's extended family who lived nearby. The court recognized that father had been actively involved in raising the child, had altered his demanding work schedule as a chef to spend more time at home with the child, had graduated from a Montessori child care program, and had worked as a teacher's assistant at the child's preschool. Accordingly, the award of sole custody to mother was made "subject to the contact schedule that [father] currently enjoys."

¶ 6. Despite its finding that the child had done well under the existing contact schedule, the court noted that the parents had disparate parenting styles that had resulted in significant conflicts, and that "due to the disparity of the rules between the [father's] and the [mother's] homes" the child "lives in a whipsaw, and the parties need to modify their conduct or their son will be the loser." The court thus recommended continued therapy for the child, and ordered that, within five days of the divorce judgment, the parties "meet with their respective attorneys and stipulate to written, consistent parenting rules for [the child]." Failure to reach a "complete stipulation" within 21 days of the order would require that the parties meet with a mediator "and establish such rules." While also recognizing that the parties' inability to communicate and reach agreement on the best interests of the child had resulted in frequent conflict over the best course of treatment for the child's medical problems, the court ordered that father be allowed to be present at the child's appointments and extracurricular activities.

¶ 7. The court declined mother's request for an award of spousal maintenance, finding that the parties earned approximately equal incomes and parented the child on a nearly equal basis, and that mother was able to meet her reasonable needs and support herself at the standard she had enjoyed during the marriage. The court awarded the parties their personal property and individual debts. The only significant marital asset

was the parties' home, which the court initially awarded to father on condition that he pay mother $12,000 within three years as her share of the $24,000 net equity in the home. The court subsequently granted father's motion to amend the judgment to eliminate the $12,000 payment, finding that it had misinterpreted the evidence and that there was, in fact, no equity in the home. Following a subsequent hearing, father was ordered to pay child support of $50 per week. This appeal followed.

¶ 8. While the instant appeal was pending, mother moved to modify the shared parent-child contact schedule to enable her to move to Florida to live for part of the year with her fiance, who is employed principally in that state. Father filed an opposition to the motion and a cross-motion to modify custody by awarding him sole physical and legal rights and responsibilities. Following a hearing, the court issued a written decision, concluding that mother's planned move constituted a real, substantial, and unanticipated change of circumstances, and that the child's best interests required an award of primary parental rights and responsibilities to father, and substantial parent contact with mother during summers and holidays. Mother appealed the court's modification order, and that appeal remains pending.

¶ 9. Following notification of the court's modification order, we issued an order directing the parties to show cause why the instant appeal should not be dismissed as moot. Each of the parties having filed supplemental briefing addressed to the issue, we now conclude that the court's order modifying parental rights and responsibilities and parent-child contact has superseded that portion of the original decree related to these issues, thus rendering mother's claims as to these issues moot and beyond the consideration of this Court. See *Nevitt v. Nevitt*, 155 Vt. 391, 395, 584 A.2d 1134,

1137 (1990) (where parties stipulated to court order modifying custody provision of divorce judgment, claims on appeal from divorce judgment relating to custody were rendered moot); *Martin v. Martin*, 815 S.W.2d 130, 132 (Mo. Ct. App. 1991) (order modifying visitation schedule while dissolution judgment was pending on appeal rendered appeal from judgment moot and mandated dismissal of appeal).

¶ 10. The modification order did not, however, address any issues other than custody and visitation. Therefore, mother's claims concerning the denial of maintenance and the division of the marital property were not rendered moot by the order. A trial court has considerable discretion in ruling on maintenance, and the party challenging a court's decision must show that there is no reasonable basis to support it. *Johnson v. Johnson*, 155 Vt. 36, 40, 580 A.2d 503, 506 (1990). The court's factual findings will stand unless, viewing the evidence in the light most favorable to the prevailing party and excluding the effect of modifying evidence, there is no credible evidence to support them. *Hoover v. Hoover*, 171 Vt. 256, 258, 764 A.2d 1192, 1193 (2000).

¶ 11. Here, mother asserts that the court's denial of maintenance is inconsistent with its findings that mother's reasonable monthly expenses exceed her income, that she has experienced severe financial shortfalls, and that she was in arrears on doctors and utility bills. The court actually found that mother's stated monthly income of $1815 was roughly equal to her adjusted expenses of $1989 for herself and the child (mother was also later awarded child support of $215 per month), and the evidence supports these findings. The parties' assets and liabilities were few, and the court divided them approximately equally. The court awarded the only significant marital asset, the home, to father, but also required that he assume sole responsibility

for the $136,000 mortgage. The court further noted that some of the parties' earlier costs and debts were attributable to their acknowledged substance abuse, which appeared to be under control, that the parties' current monthly incomes were roughly equal (father's was $1839), and that mother was able to meet her reasonable needs and support herself at the standard of living established during the marriage. These findings are supported by the evidence, and support, in turn, the court's conclusion that mother failed to meet the threshold criteria for an award of maintenance under 15 V.S.A. § 752(a) (court may award spousal maintenance where it finds that spouse seeking award lacks sufficient income to provide for his or her reasonable needs and is unable to support himself or herself at standard of living established during marriage). The only finding specifically challenged by mother is the court's reference to the costs attributable to the parties' substance abuse, and here the record evidence showed that mother had experienced many costs, including an automobile accident and residential treatment, attributable to her alcohol abuse. Accordingly, we discern no basis to conclude that the court's denial of maintenance was an abuse of discretion.

¶ 12. Mother next contends the court's property award was in error. The court enjoys considerable discretion in making a property award, which is reversible only upon a showing that there is no reasonable basis to support it. *Soutiere v. Soutiere*, 163 Vt. 265, 271, 657 A.2d 206, 209 (1995). The parties here had agreed that father should be awarded the marital home, but disagreed as to the amount of equity, if any, there was to divide between the parties. The court initially found that the home had a fair market value of $160,000 and a mortgage of $136,000, and ordered father to pay mother $12,000 over three years based on its finding that there was equity of

$24,000 in the home. The court's finding was based on an appraisal and testimony by an expert appraiser. The court subsequently issued an order granting father's motion to amend the judgment, explaining that it had reviewed the record and realized that it had misunderstood the appraiser's evidence, which showed that the current value of the home was $129,000, and that the value would rise to $160,000 only after the completion of certain repairs and improvements. Accordingly, the court found that there was no net equity in the home to award to mother. While the court acknowledged that this left no significant assets of any kind to award mother, as the parties had not accumulated any, it also noted that it left mother with no significant debts, responsibility for the mortgage having been assigned exclusively to father.

¶ 13. Mother now contends the court abused its discretion in basing its findings on a "bogus" appraisal submitted by the expert, who admitted that the $160,000 figure was mostly for the purpose of obtaining a bank loan. Mother does not demonstrate how this undermines the credibility of the $129,000 figure, which she has not specifically challenged. Mother also asserts generally that the court abused its discretion in awarding the marital home to father and failing to award her any assets, but mother stipulated to the award of the home to father, and identifies no other marital assets that the court might have assigned to her or wrongly allocated. Accordingly, we discern no basis to disturb the property award.

*The claims on appeal relating to the provisions of the divorce judgment dealing with parent-child contact are dismissed as moot. The provisions of the divorce order relating to spousal maintenance and the division of the marital property are affirmed.*

Note: Chief Justice Amestoy was present when the case was submitted on the briefs but did not participate in this decision.