2005 VT 36

**Gregory SOCHIN v. Lea Ann SOCHIN**

[872 A.2d 373]

No. 04-271

¶ 1. March 23, 2005. Mother appeals a Windham Family Court decision denying her motion to modify parental rights and responsibilities so that she could relocate to Florida with the parties' minor child. Because it is undisputed that mother's proposed relocation is a "real, substantial and unanticipated change of circumstances," 15 V.S.A. § 668, this case turns on a determination of the best interests of the child. The family court's evaluation of the factors contained in 15 V.S.A. § 665(b) is supported by the record, and, therefore, we will not disturb the court's conclusion that it is in the child's best interests to remain with father in Vermont. Accordingly, we affirm the court's decision to award primary legal and physical parental rights and responsibilities to father.

¶ 2. The parties were married in 1991, and have one child, Demetri, who was born in September 1998. Following their separation, the parties entered into an interim stipulation, filed with the family court in March 2002, providing for a shared custodial arrangement — Demetri would spend from 8:00 a.m. Thursday morning until noon on Sunday with father and from noon on Sunday until Wednesday at 4:30 p.m. with mother, with alternating custody on Wednesdays from 4:30 p.m. until Thursday morning. The parties have followed that contact schedule since the filing of the interim stipulation, and in fact began splitting Demetri's time between them roughly in half in March 2001 when the divorce action was filed.

¶ 3. The court issued a final divorce order in April 2003, awarding mother sole physical and legal parental rights and responsibilities, while maintaining the contact schedule from the interim stipulation. Mother appealed, and, while that appeal was pending, she moved in family court to modify the shared parent-child contact schedule to enable her to move to Florida to live for part of the year with her fiancé, who is employed principally in that state. Father opposed the motion and cross-moved for sole parental rights and responsibilities. Following a hearing, the court issued the decision currently on appeal, concluding that mother's planned move constituted a real, substantial, and unanticipated change of circumstances, and that the child's best interests required an award of primary parental rights and responsibilities to father, and substantial parent contact with mother during summers and holidays.[1] For the reasons that follow, we now affirm.

¶ 4. The family court enjoys broad discretion in determining custody, and we accept its findings unless they are clearly erroneous. *Payrits v. Payrits*, 171 Vt. 50, 52-53, 757 A.2d 469, 472 (2000). We will disturb the family court's findings of fact only if, "viewing the record in the light most favorable to the prevailing party and excluding the effect of modifying evidence, there is no credible evidence to support the findings." *Hoover v. Hoover*,

---

[1] In light of the decision granting parental rights and responsibilities to father, we dismissed as moot mother's appeal of the initial divorce order's parent-child contact schedule. *Sochin v. Sochin*, 2004 VT 85, ¶ 9, 177 Vt. 540, 861 A.2d 1089 (mem.).

171 Vt. 256, 258, 764 A.2d 1192, 1193 (2000). We will not overturn the family court's legal conclusions so long as they are supported by its findings. *Payrits*, 171 Vt. at 53, 757 A.2d at 472.

¶ 5. The legal framework for custody modification cases consists of a two-step inquiry. First, the party seeking to modify custody must demonstrate that the proposed modification is a "real, substantial and unanticipated change of circumstances." 15 V.S.A. § 668. See *Habecker v. Giard*, 2003 VT 18, ¶ 5, 175 Vt. 489, 820 A.2d 215 (mem.) (characterizing "change of circumstances" as a "threshold showing"). In this appeal, neither party disputes the family court's conclusion that mother's proposed move to Florida would be a real, substantial, and unanticipated change of circumstances.

¶ 6. Next, the moving party must show that the proposed modification would be in the best interests of the child. 15 V.S.A. § 668; *Habecker*, 2003 VT 18, ¶ 5. In assessing the child's best interests, the family court must consider the nine factors contained in 15 V.S.A. § 665(b), and otherwise enjoys the broad discretion outlined above. *Id.* ¶ 10. As long as the court considers each factor, § 665(b) "imposes no specific requirement on how this consideration is to be manifested in the court's findings and conclusions." *Mansfield v. Mansfield*, 167 Vt. 606, 607, 708 A.2d 579, 581 (1998) (mem.). Further, the court "may draw upon its own common sense and experience in reaching a reasoned judgment" as to the best interests of the child. *Payrits*, 171 Vt. at 53, 757 A.2d at 472.

¶ 7. This Court has described a change in physical custody as a "violent dislocation," *Kilduff v. Willey*, 150 Vt. 552, 555, 554 A.2d 677, 680 (1988), and has required the noncustodial parent to prove that the child's best interests "would be so undermined by a relocation with the custodial parent that a transfer of custody is necessary." *Lane v. Schenck*, 158

Vt. 489, 499, 614 A.2d 786, 792 (1992). However, the trial court should evaluate the effect of a proposed relocation and determine whether a change in custody is warranted by examining the actual parenting arrangement experienced by the child and not the arrangement described in a prior court order concerning parental rights and responsibilities. Thus, where, as here, the parties share "child-rearing and its concomitant decision-making," relocating to a distant place "requires at the very least a reassessment of the custodial arrangement and ... will often necessitate a change in custody," especially when the parties are unable to share parenting responsibilities due to their own difficulties communicating. *Hoover*, 171 Vt. at 259, 764 A.2d at 1194. This follows because, where parents have shared parenting responsibilities over time and have both spent substantial time with the child, the child's loss from one parent's relocation is substantial regardless of which parent gets custody of the child.

¶ 8. This case required just such a reassessment of the custodial arrangement established in the divorce order. While the divorce order granted sole physical and legal responsibility to mother, it continued the parties' preexisting contact schedule under which father and mother equally share time with Demetri.[2] In ruling on the motion to modify custody, the family court noted that the parties have maintained this arrangement since March 2001. As a result of the virtually equal amounts of time each parent spent with Demetri for more than three years leading up to the modification decision,

---

[2] Excluding the alternating 15.5 hour period from Wednesday afternoon until Thursday morning, mother spent 76.5 hours per week with Demetri and father spent 76.

the loss to Demetri of either parent's presence would be substantial. See *deBeaumont v. Goodrich*, 162 Vt. 91, 102, 644 A.2d 843, 850 (1994) (recognizing that when divorced parents have spent roughly equal time with child, loss to child of either parent's presence is "very great"). Thus, the family court correctly framed its core task in this case as a reexamination of Demetri's best interests in light of mother's proposed move to Florida. See *id.* at 100, 644 A.2d at 849 ("The whole point of the modification process is that changed circumstances may have made the initial decision inappropriate, so a reexamination of the interests of the children is warranted.").

¶ 9. The family court evaluated Demetri's best interests properly, carefully assessing the factors contained in 15 V.S.A. § 665(b) in light of the evidence presented at the modification hearing and mother's proposed move to Florida. First, the court acted within its discretion in determining that several factors did not weigh in either party's favor. Under § 665(b)(1), the court concluded that both parties are devoted to Demetri and are equally able to provide him with love, affection, and guidance. Discussing § 665(b)(5), the court observed that each party wants Demetri to have a positive relationship with the other, but simultaneously wants to be his primary parent. Thus, the court concluded they are equally likely to "encourage regular and frequent contact with the other parent." Under § 665(b)(8), the court noted that both parties have failed to communicate effectively with each other and thus did not weigh this factor in either party's favor. As for § 665(b)(9), the court found it irrelevant because there was no evidence of abuse.

¶ 10. The court also determined that "the quality of the child's relationship with the primary care provider," § 665(b)(6), played no role in the decision because the parties had been sharing their time with Demetri equally since before the divorce order. Mother argues that the court abused its discretion by concluding that she was not the primary care provider because the court considered no new evidence and thus was bound by collateral estoppel from revising the divorce court's order. This argument fundamentally misapprehends the nature of these proceedings. "For purposes of a modification motion, of course, the most relevant period is that between the divorce and the filing of the motion to modify." *deBeaumont*, 162 Vt. at 101, 644 A.2d at 849. In other words, the court must reassess the divorce order's allocation of parental rights and responsibilities in light of "'*all* relevant periods of the child's life.'" *Id.* (emphasis added) (quoting *Nickerson v. Nickerson*, 158 Vt. 85, 91, 605 A.2d 1331, 1334 (1992)). The family court here did just that, considering substantial new evidence adduced by both parties concerning events and experiences that transpired after the divorce order. For example, the court's detailed findings of fact discuss Demetri's trip to Florida in June 2003, mother's work with a therapist, father's work in several parenting classes, Demetri's enrollment and the parties' volunteer work at West River School, the parties' responses to Demetri's asthma, and Demetri's relationship with mother's fiancé. The court also recognized that during all relevant time periods the parties spent almost exactly equal amounts of time with Demetri. Thus, we conclude that the family court acted within its discretion in determining that neither party "ha[d] the role of primary care provider." See *Payrits*, 171 Vt. at 54, 757 A.2d at 472 (upholding family court's determination that because both parents spent approximately equal time with the children for the three previous years, both were the children's primary care providers).

¶ 11. With respect to "the ability and disposition of each parent to assure that the child receives adequate food, clothing, medical care, other material needs and a safe environment," § 665(b)(2), the court found that "[b]oth parents have equal abilities in this regard, except as to medical care." The court noted that mother had "shown greater insight" into Demetri's asthma treatment, but tempered its finding by observing that mother had shown "undue suspicion" about the risk to Demetri posed by his pet dog and that she had not shared medical information with father.

¶ 12. The court concluded that the remaining factors showed that Demetri's bests interests would be served by allocating primary legal and physical rights to father. The tipping point of the court's analysis was its assessment of each parent's ability to meet Demetri's "present and future developmental needs," § 665(b)(3). The court recognized that the time father had spent in parenting classes gave him "a somewhat more sensitive ability to meet Demetri's developmental needs," and that father's testimony "showed a much more detailed and thoughtful understanding of how to impose discipline in a positive manner than did the mother's." Significantly, the court found that "[t]his is clearly one of Demetri's most important needs ... as described by all parties." Thus, the court properly concluded that this factor was critical to Demetri's best interests and that it tipped the § 665(b) balance in father's favor.[3]

¶ 13. As we noted at the outset, the family court enjoys broad discretion in determining the best interests of the child in deciding a motion to modify parental rights and responsibilities. *Habecker*, 2003 VT 18, ¶ 10. Here, the family court found that father had demonstrated a greater ability to meet Demetri's developmental needs, a factor that, as the court noted, all parties viewed as especially important for Demetri. The court also found that none of the factors weighed decidedly in mother's favor. As a result, the court properly exercised its discretion by concluding that the § 665(b) factors warranted a reallocation of primary legal and physical parental rights and responsibilities to father.

*Affirmed.*

---

[3] As for the remaining two factors, the court found that Demetri's "adjustment to [his] present housing, school and community and the potential effect of any change," § 665(b)(4), and his "relationship[s] ... with any other person who may significantly affect [him]," § 665(b)(7), weighed in father's favor. The court based that conclusion on its findings that Demetri, having spent his whole life in his current community, "has established routines" in Vermont where he enjoys "a network of loving relatives."