NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 103

No. 2016-337

| | |
|---|---|
| Tracy McIntire Quinones | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Family Division |
| | |
| Patrick C. Bouffard | April Term, 2017 |

Barry D. Peterson, Acting Superior J., Specially Assigned

Mary P. Kehoe of The Kehoe Law Firm, P.C., Burlington, for Plaintiff-Appellant.

Harley Brown, Richmond, for Defendant-Appellee.

PRESENT: Reiber, C.J., Skoglund, Robinson and Eaton, JJ., and Carroll, Supr. J.,
        Specially Assigned

¶ 1. **ROBINSON, J.** At issue in this appeal is whether a family court may, after concluding that a custodial parent's relocation constitutes an unanticipated change in circumstances, maintain physical rights and responsibilities with that parent but then decline to modify parent-child contact, effectively barring the custodial parent from moving because it determined that the move is not in the child's best interests. Custodial mother appeals the family court's denial of her motion to modify parent-child contact to facilitate her relocation with the child. We conclude that the family court applied the wrong framework in evaluating mother's motion, and reverse and remand.

¶ 2. The family court found the following facts. Mother and father have one child together, born in January 2007, but were never married. When the parties separated in 2007, they entered into a stipulation and final order regarding parental rights and responsibilities. The order provided that the parties would share legal rights and responsibilities and mother would have sole physical rights and responsibilities. It also provided that father would have "daily contact by agreement" with their child, and that vacations and holidays would be determined by agreement.

¶ 3. Following the parents' separation, they continued living together until 2011. After the parents started living separately, the child spent most nights with mother but continued to have almost daily contact with father. For example, father would often pick the child up in the mornings to go to school. Father also had the child overnight on Fridays and Sundays; the child stayed with the maternal grandmother on Saturday nights and with mother the rest of the week. The child has a close relationship with both parents, and mother and father each testified that the other was a good parent. In addition, the court found that the child had many relatives in Vermont, including grandparents, aunts, uncles, and cousins, with whom the child has close relationships.

¶ 4. In January 2015, mother married her partner whom she met in Vermont in 2010 and who now lives in Staten Island, New York. Soon thereafter, mother lost her job; she has been unemployed ever since. The parties testified that father began spending less time with the child after mother got married and lost her job, but father continued having the child overnights on Fridays and Sundays.

¶ 5. In April 2016, mother filed a motion to modify parent-child contact and legal rights and responsibilities, announcing her intent to move to Staten Island to live with her spouse. Mother asked the court to issue an order that would permit her to relocate to New York with the child and to establish a new parent-child contact order. She also requested that the court grant her sole legal rights and responsibilities, citing a breakdown in communication between the parents since her marriage, father's refusal to attend mediation, and the impracticality of sharing legal rights if she

2

moved to New York. Mother proposed an alternate parent-child contact schedule that would allow father to have the child every other weekend and two weeks in the summer, plus half of the child's school vacations. Father opposed mother's motions, and requested that the court modify physical rights and responsibilities and award them to him.

¶ 6. The family court held a hearing in August 2016. In its findings and order, the family court first found that mother's marriage to someone who lived in New York City constituted a change in circumstances. Considering the best-interest factors, the court determined that the majority of them did not favor granting either parent sole rights and responsibilities. It determined that the fourth and seventh factors favored father. See 15 V.S.A. §§ 665(b)(4), (7). The fourth statutory factor considers "the quality of the child's adjustment to the child's present housing, school, and community and the potential effect of any change." Id. § 665(b)(4). The court determined that all of the child's relatives lived in Vermont and thus the child's ability to spend time with them would be greatly reduced, that a move from Vermont to an apartment in Staten Island would be a "dramatic change," and that the reduction in time with father would affect the child's relationship with him. The seventh factor considers "the relationship of the child with any other person who may significantly affect the child." Id. § 665(b)(7). The court concluded that if the child moved with mother, the child's contact with father as well as other family members and friends would be greatly reduced, which would not be in the child's best interest.

¶ 7. However, the court determined that the sixth statutory factor favored mother. That factor considers "the quality of the child's relationship with the primary care provider, if appropriate given the child's age and development." Id. § 665(b)(6). The court noted that father was engaged in the child's life and that the child was close to both parents. However, it concluded that, "[b]ased solely on the amount of time [the child] spends with each parent," mother was the child's primary caregiver.

3

¶ 8.     The court then opined that mother's proposal to move the child to New York would reduce parent-child contact with father by over fifty percent, would require the child to spend twelve to fourteen hours in the car visiting father every other weekend, and would take the child away from family and friends in Vermont. Accordingly, the court concluded that the move was "clearly not in [the child's] best interest." Furthermore, the court concluded that it was in the child's best interest that the parents "continue to share legal parental rights and responsibilities, and that [mother] retain physical rights and responsibilities subject to [father's] rights to parent child contact as previously ordered." The court therefore denied mother's motion to modify father's parent-child contact, stating that the original final order would remain in place and that "substantial changes to [the child's] residence must be by mutual agreement of the parties."[1]

¶ 9.     On appeal, mother raises three primary arguments. First, she argues that the family court was required to modify legal rights and responsibilities and parent-child contact once it concluded that there was a substantial change in circumstances. Second, she argues that the court failed to give sufficient weight to her role as the primary caregiver with sole physical rights and responsibilities. Third, she argues that some of the court's factual findings were not supported by the record.[2] For the reasons set forth below, we conclude that the court failed to apply the proper analysis when it awarded mother physical rights and responsibilities but then essentially ordered her to remain in Vermont with the child.

---

[1] The hearing focused on whether mother should be allowed to move with the child, rather than on father's request to modify physical rights and responsibilities, and the trial court's decision does not expressly mention father's motion.

[2] Mother challenges the trial court's finding that the child "enjoys going fishing, swimming, kayaking, and out on the boat with his father." At the hearing, father did testify that he tries to engage the child in outdoor activities. However, father emphasized that the child prefers to play video games and did not testify that the child particularly likes these outdoor activities. We agree with mother that the family court's finding is not supported by credible evidence. However, our analysis on appeal is not significantly impacted by this error and we do not discuss it further.

¶ 10. The family court "has broad discretion both in assessing whether there has been a change in circumstances and in evaluating what parenting arrangement is in a child's best interests." Wener v. Wener, 2016 VT 109, ¶ 31, __ Vt. __, 157 A.3d 1108. The court's factual findings must stand unless, "viewing the record in the light most favorable to the prevailing party and excluding the effect of modifying evidence, there is no credible evidence to support the findings." Sochin v. Sochin, 2005 VT 36, ¶ 4, 178 Vt. 535, 872 A.2d 373 (mem.) (quotation omitted). We uphold the court's legal conclusions if "they are supported by its findings." Id.

¶ 11. When considering a motion to modify legal or physical rights and responsibilities or parent-child contact, the family court must follow a two-step analysis. First, the moving party must show that there is a "real, substantial and unanticipated change of circumstances." 15 V.S.A. § 668(a); see also Sochin, 2005 VT 36, ¶ 5. If the party meets that burden, the court may modify legal and/or physical rights and responsibilities or parent-child contact "if it is in the best interests of the child." 15 V.S.A. § 668(a). In determining the best interests of a child, the court considers the nine factors listed in 15 V.S.A. § 665(b). Sochin, 2005 VT 36, ¶ 6.

¶ 12. Although the family court has great discretion in this area, its authority is not boundless. We have held that "we cannot condone a process that substitutes the judgment of a court for that of the custodial parent merely because the court would have done something different if it had been the parent." Lane v. Schenck, 158 Vt. 489, 495, 614 A.2d 786, 789 (1992).

¶ 13. Our caselaw establishes that, in the face of a relocation that amounts to a change in circumstances, and when there are competing requests for physical rights and responsibilities,[3] the

---

[3] Mother appeals the family court's denial of her motion to modify legal rights and responsibilities, but her briefing focuses almost entirely on the core parental authority incident to physical rights and responsibilities: the authority to decide where the child lives. See 15 V.S.A. § 664(1)(B). She has not presented arguments concerning other significant child-rearing issues, such as those involving the child's religious upbringing, schooling, or travel, to support the argument that the trial court abused its discretion in declining to modify the parties' shared legal rights and responsibilities. Accordingly, we affirm the family court's denial of mother's motion

5

family court must determine, in light of the proposed move, which custodian and parent-child contact schedule will serve the child's best interests, not whether the move itself is in the child's best interests. The court may not determine that it is in the child's best interests to remain with the custodial parent but restrict the custodial parent's ability to relocate with the child. We rely on two main cases to support these propositions: Lane, 158 Vt. 489, 614 A.2d 786, and McCart v. McCart, 166 Vt. 629, 697 A.2d 353 (1997) (mem.).

¶ 14. In Lane, we confronted the issue presented in this case. The mother was originally awarded sole physical and legal rights and responsibilities and later announced her intention to move out of state with the children for the purpose of attending law school. 158 Vt. at 491, 614 A.2d at 787. The father then moved to modify, asking the court to award him custody. The family court concluded that the mother should remain the custodian, but that the move was not in the children's best interests, and ordered that the mother must live within a four-hour drive of the father. Id. at 497, 614 A.2d at 790. We reversed and remanded.

¶ 15. In doing so, we emphasized that generally the custodial parent, not the court, has the authority to decide where the child lives. We explained, "[b]ecause of the impracticality of substituting the judgment of a court for that of the custodial parent, a court must employ some level of deference when evaluating lifestyle decisions affecting childrearing." Id. at 495, 614 A.2d at 789. We relied on persuasive authority explaining that deferring to the custodial parent places the decision of where the child will live with the person already found by the court to be best suited to serve as the custodial parent, and most able to meet the child's needs. Id. We emphasized, "we cannot condone a process that substitutes the judgment of a court for that of the custodial parent merely because the court would have done something different if it had been the parent." Id. In

---

to modify legal rights and responsibilities and focus our analysis on the central subjects of this appeal: physical rights and responsibilities and parent-child contact.

6

that case, at the time of the divorce, the mother was given sole legal and physical rights and responsibilities, which included the right to decide where she would live with the children.

¶ 16.    We explained that the court's responsibility in relocation cases is to determine which custodial parent serves the child's best interests in light of the anticipated relocation, not to second-guess whether the relocation should be allowed.  Id. at 496, 614 A.2d at 790.  Because the family court in Lane focused on whether it was in the children's best interests to move, it "focused on the wrong inquiry and fashioned an improper modification."  Id. at 497, 614 A.2d at 790.  "The proper inquiry was for the court to determine the appropriate custodial parent in light of the change in circumstance—the move to a distant location."  Id.

¶ 17.    We acknowledged that a custodial parent's relocation might adversely impact a noncustodial parent's contact with the child, but concluded that the general policy favoring the opportunity for maximum continuing physical and emotional contact between the child and both parents "does not supersede the custodial parent's reasonable decision to relocate" or "overshadow the proper role of the custodial parent."  Id. at 499, 614 A.2d at 791.

¶ 18.    Similarly, in McCart, we reversed and remanded when the family court concluded that it was in the children's best interests to remain with the mother, but then prohibited the mother from moving with the children.  166 Vt. at 630, 697 A.2d at 354.  In that case, the mother was initially awarded sole physical and legal rights and responsibilities.  Two years after the final divorce, she informed the father that she planned to move with the children to New Mexico, where her fiancé was employed.  The father sought to modify the final divorce judgment to obtain sole legal and physical rights and responsibilities.  After a hearing, the court concluded that the mother's move represented a substantial and unanticipated change of circumstances.  The court found that the best-interest factors were closely balanced, but on the whole favored maintaining custody with the mother.  However, the court concluded that the mother's reasons for moving to New Mexico were trivial compared to the substantial loss the children would suffer as a result of

7

their separation from the father, and entered an order preventing the mother from moving to New Mexico with the children.

¶ 19. Relying on Lane, this Court explained that the trial court should have determined the appropriate custodial parent in light of the move. We stated:

> If the court concludes that the best interests of the children would be better served by continuing to live with the custodial parent in the new location rather than with the noncustodial parent in Vermont, the motion to modify must be denied. Conversely, if the court determines that the move would prove more detrimental to the children, then a change of custody is warranted.
>
> These were the choices available to the family court; disallowing the move was not a permissible disposition. However much one may sympathize with the court's desire to maintain the family unit, it could not substitute its judgment for that of the custodial parent. Having found, on balance, that the children's best interests lay with maintaining custody in mother, the court abused its discretion in prohibiting the move rather than denying the motion. Of course, the court remains free on remand to modify the visitation or child support schedules to accommodate any additional costs or burdens occasioned by [the] mother's relocation to New Mexico.

Id. at 630, 697 A.2d at 354 (quotation and citation omitted).

¶ 20. In this case, as in Lane and McCart, the family court erred by focusing on whether the move was in the child's best interests, and effectively prohibiting mother from moving with the child when it concluded that it was not. The court's framework and process for considering this case, although largely consistent with the way the parties framed it, was not consistent with the applicable statutes and our caselaw which call for a determination of whether the movant has shown a real, substantial, and unanticipated change of circumstances, an assignment of physical rights and responsibilities in the event of changed circumstances, and the development of a parent-child contact schedule that serves the child's best interests in light of the custodial assignment.

¶ 21. The court began by properly concluding that mother's marriage and proposed move constituted a real, substantial, and unanticipated change in circumstances; the child's relocation to

8

New York would "significantly impair father's ability to continue exercising the rights and responsibilities he has been exercising." Hawkes v. Spence, 2005 VT 57, ¶ 16, 178 Vt. 161, 878 A.2d 273.

¶ 22. Next, the court should have determined whether the child's best interests would be optimally served by transferring physical rights and responsibilities to father. In making this assessment, the court should be mindful of our admonition that "when a noncustodial parent seeks a change in custody based solely on the custodial parent's decision to relocate, the moving party faces a high hurdle in justifying the 'violent dislocation' of a change in custody from one parent to the other." Hoover v. Hoover, 171 Vt. 256, 259, 764 A.2d 1192, 1194 (2000) (quoting Lane, 158 Vt. at 499, 614 A.2d at 792). Father would have to "prove that the [child's] best interests would be so undermined by a relocation with the custodial parent that a transfer of custody is necessary." Lane, 158 Vt. at 499, 614 A.2d at 792. However, the proposed move may be highly relevant to the best-interests analysis, and its negative impact on the child's best interests could outweigh the benefits of continuity with his primary caregiver. But the determination of which parent should be awarded physical rights and responsibilities in light of the relocation, rather than whether the relocation itself is in the child's bests interests, should drive the court's analysis. In addition to considering the child's relationship with the primary caregiver, the court may also consider the relative stability, relationships, and opportunities available to the child in each of the alternative living situations.

¶ 23. Here, the family court could have concluded that the child's best interests were better served by remaining in Vermont with father and then modified the custody arrangement to reflect that conclusion. See Rogers v. Parrish, 2007 VT 35, 181 Vt. 485, 923 A.2d 607 (affirming family court order finding custodial parent's relocation to be change in circumstances and concluding that remaining with previously noncustodial parent in Vermont was in child's best interests); Sochin, 2005 VT 36 (same); Habecker v. Giard, 2003 VT 18, 175 Vt. 489, 820 A.2d

9

215 (mem.) (same). Or it could have decided that the child's best interests would be better served by remaining in mother's custody and moving to New York. See Lane, 158 Vt. at 497, 614 A.2d at 790.

¶ 24. Finally, the court should have fashioned a parent-child contact order that would serve the child's best interests, in light of its determination that physical rights and responsibilities should remain with mother. See 15 V.S.A. § 664(2) (" 'Parent child contact' means the right of the parent who does not have physical responsibility to have visitation with the child."). If the court assigned physical rights and responsibilities to father, it would be charged with ordering a parent-child contact schedule that would ensure continued contact between mother and the child. If the court denied father's motion to transfer physical rights and responsibilities to him, it could not, under the rubric of a parent-child contact order, prevent mother from exercising the authority—including deciding where she and the child reside together—associated with physical rights and responsibilities. Although the noncustodial parent is entitled to substantial parent-child contact in the child's best interests, 15 V.S.A. § 650, the court could not maintain the existing parent-child contact order if doing so would prevent mother from relocating with the child even though it had ordered that she retain physical rights and responsibilities. See Lane, 158 Vt. at 499, 614 A.2d at 791; see also Adamson v. Dodge, 2006 VT 89, ¶ 7, 180 Vt. 612, 910 A.2d 821 (mem.) (recognizing that court may not order parent to return to Vermont after relocation, and affirming modification of parent-child contact schedule when parent's relocation meant that "adherence to the existing [schedule] was impossible"). In fashioning a parent-child contact order, the court could consider, among other factors, the existing pattern and quantity of contact between child and father and the challenges of traveling between Vermont and New York City. The court is not limited to considering the specific proposals of the respective parties.

¶ 25. For the above reasons, we reverse the trial court's order denying mother's motion to modify parent-child contact and remand the case for the family court to reconsider mother's and

father's motions in accordance with this opinion. The trial court may conclude that the child's best interests are served by remaining in Vermont with father, and modify parental rights and responsibilities. Or it may conclude that the child's best interests are to remain in mother's custody and move to New York with her. In either event, it should establish an appropriate parent-child contact schedule.

Reversed and remanded.

FOR THE COURT:

_____
Associate Justice

¶ 26. **REIBER, J., concurring.** I agree with the majority that the family court should have modified the parties' current parental rights and responsibilities in response to mother's intended relocation rather than maintain those rights and responsibilities based on its conclusion that the relocation is not in their child's best interests. Accordingly, I concur with the majority's legal analysis and mandate. I write separately, however, to state some of the gaps in the majority's rendition of the family court's findings and to emphasize what should be the critical considerations for the court on remand.

¶ 27. The way the family court resolved the parties' motions is understandable, given the circumstances of this case and how the parties' framed their dispute. The evidence presented at the motion hearing focused on whether mother's intended move was in the best interests of the parties' son, and mother was noncommittal when father's attorney, and then the court, questioned her as to whether she would move if the court were inclined to determine that the move was not in the boy's best interests.

¶ 28.    Father presented the testimony of relatives to establish that the parties' son had close relationships with members of father's extended family living close by in Vermont, where the boy had spent his entire life.  The court found that the child "has a very close relationship with his aunts, uncles, and cousins who all live in the area," and concluded that moving the boy "from a loving, stable environment where he has lived for his entire life surrounded by a close knit group of family and friends to a large city where he only knows [mother] and her husband is not in [his] best interest."

¶ 29.    In contrast, with respect to mother and her husband, the court found that, except for the husband's month-long business trip to Las Vegas in January 2015 when he and mother got married, the two had "not resided together for more than a few days at a time."  The court also found that plaintiff and her husband "had some rocky patches" before being married and "took a break" from their relationship for several months; that mother's husband had been living in New York since 2013; that the parties' son had been to New York with mother to visit her husband on only two occasions since the two were married; that the child had had "face to face contact" with the husband only "a few times"; and that mother "would need to rely completely on [her husband] to do her share of any transportation required to facilitate parent-child contact" because she did not drive due to anxiety.  These were some of the facts that, in concert with how the parties framed the issue, led the court to focus on whether mother's intended relocation was in the best interests of the parties' child rather than on whether, given the intended relocation, the best interests of the child warranted transferring physical parental rights and responsibilities to father.

¶ 30.    As the majority correctly concludes, notwithstanding how the parties framed their dispute at the motion hearing, the family court should have determined how to modify parental rights and responsibilities in light of mother's intended relocation—whether to transfer physical responsibility to father or whether to maintain that responsibility with mother.  I agree with the majority that Lane v. Schenck, 158 Vt. 489, 614 A.2d 786 (1992) and McCart v. McCart, 166 Vt.

12

629, 697 A.2d 353 (1997) (mem.) are the controlling precedents that direct the family court to consider how parental rights and responsibilities are to be modified in light of an intended relocation rather than to substitute its judgment for that of the custodial parent as to whether the move itself serves the child's best interests.

¶ 31. It is important to recognize, however, that in both of those cases the custodial parent had been awarded sole physical and legal rights and responsibilities. See McCart, 166 Vt. at 629, 697 A.2d at 353; Lane, 158 Vt. at 491, 614 A.2d at 787. In contrast, in this case, the parties share legal rights and responsibilities, and neither the family court nor the majority has modified that aspect of the parentage order. That is noteworthy because in past cases we have upheld the family court's transfer of physical rights and responsibilities to the parent remaining in Vermont, based on a consideration of the child's best interests, in situations where that parent shared legal rights and responsibilities with the parent seeking to relocate. See, e.g., Rogers v. Parrish, 2007 VT 35, ¶ 2, 181 Vt. 485, 923 A.2d 607; Habecker v. Giard, 2003 VT 18, ¶ 2, 175 Vt. 489, 820 A.2d 215 (mem.) Moreover, although mother was awarded sole physical parental rights and responsibilities, her attorney, in explaining to the court mother's interest in fostering an ongoing relationship between father and the parties' son, stated that mother "has honored a shared parenting paradigm." Cf. Sochin v. Sochin, 2005 VT 36, ¶¶ 2-3, 178 Vt. 535, 872 A.2d 373 (mem.) (upholding transfer of custody to nonrelocating parent where final divorce order awarded sole physical and legal rights and responsibilities to party later seeking to relocate but maintained "shared custodial arrangement" based on parties' stipulation).

¶ 32. These are important considerations for the family court in resolving the parties' motions to modify, in that mother is not the only parent who has been awarded at least a share of some aspect of parental rights and responsibilities. As we stated in Hawkes v. Spence, "a critical factor in relocation cases is the amount of rights and responsibilities exercised by each parent." 2005 VT 57, ¶ 12, 178 Vt. 161, 878 A.2d 273. That the parties have shared legal responsibility

and possibly a de facto shared custodial arrangement should be key factors in the family court's assessment of the motions to modify stemming from mother's intended relocation. Thus, on remand, the family court should take into account the parties' current parental rights and responsibilities when considering the effect any modification would have on the child's stability, family relationships, and opportunities in the alternative living arrangements.


_____

Chief Justice