NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 57

No. 21-AP-301

| | |
|---|---|
| Jody LaFlam | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Rutland Unit, |
| | Family Division |
| | |
| Diana LaFlam | September Term, 2022 |

Helen M. Toor, J.

Jody LaFlam, Pro Se, West Rutland, Plaintiff-Appellee/Cross-Appellant.

Stacey Adamski of Adamski Law, PLLC, Castleton, for Defendant-Appellant/Cross-Appellee.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **CARROLL, J.** Mother Diana LaFlam appeals from an order denying her motion to modify physical and legal rights and responsibilities. She argues that her relocation to Florida following a divorce from father Jody LaFlam was an unanticipated circumstance requiring modification of the physical rights and responsibilities of their two children, and that father's neglect of the children's health warranted a modification of legal rights and responsibilities. Father cross-appeals the portion of the order finding that his neglect of the children's health constituted changed circumstances under 15 V.S.A. § 668(a). We agree with the family division that mother's relocation was not a change in circumstances as to physical rights and responsibilities, that father's conduct was a change in circumstances with respect to legal rights and responsibilities, but reverse and remand as to its best-interests analysis.

¶ 2. The family court found the following by a preponderance of the evidence. Mother and father divorced in May 2018 after seven years of marriage. Together, mother and father have a son, aged ten, and a daughter, aged seven. Mother has three daughters from a previous marriage, one of whom father adopted during the marriage. Adopted daughter was nineteen at the time of the divorce. The divorce court awarded father sole physical and legal rights and responsibilities and the family home, and established a fifty-fifty parent-child contact schedule. The divorce order required father to consult with mother on major decisions regarding son's and daughter's "health, welfare, education or medical needs."

¶ 3. Father has been inattentive to the children's medical and hygienic needs since the divorce. He once forgot to give son the correct asthma inhaler for a sleepover. Father stopped providing inhalers for son for a period of time without medical approval. Father failed to fill out a questionnaire required to complete an important evaluation based on a referral from son's pediatrician. After son was injured, father did not know if son's tetanus shot was up to date, which it was not. Father did not take son to an orthodontist despite a recommendation to do so. He failed to require the children to consistently attend mental-health counseling after mother moved to Florida. Father did not require the children to bathe for several days, after which son developed a bacterial infection. Father ignored a serious rash that daughter had developed related to a medication she was taking. Daughter developed a different rash for several days and cried when she went to the bathroom. She told the doctor that there was not enough toilet paper at home to properly wipe.

¶ 4. The children act differently depending on whether they are in Vermont or Florida. When in Florida, son, who arrives reserved, becomes more relaxed during the stay. Daughter is happy and excited to see everyone. Son and daughter are close to adopted daughter and mother's new husband in Florida. The children do not want to leave.

¶ 5. When in Vermont, son is stiff and gives one-word answers on video calls with mother. Daughter also looks sad and whispers, appearing to be checking to see if anyone is listening to the conversation. Both children have told mother that "what happens at Dad's house stays at Dad's house." In Vermont, the children spend every other weekend with their grandparents. During the pandemic, the children completed their online schoolwork from their grandparents' home. Both children do well in school. Father gets them to school on time. The family division credited the testimony of a fellow coach at the children's school who stated that daughter is happy, neither son nor daughter showed any fear of father, and father is appropriate with his children. However, the marital home is in foreclosure proceedings following father's failure to pay the mortgage for three years.

¶ 6. In July 2021, shortly before moving to Florida, mother filed a motion seeking to modify parental rights and responsibilities and parent-child contact. Mother contended that her move to Florida was a real, substantial, and unanticipated change in circumstances requiring a modification of the physical custody of the children. Mother argued that father's inattention to the children's health was a real, substantial, and unanticipated change in circumstances sufficient to modify legal custody of the children. Mother alleged that she had come to realize that father had been sexually abusive toward her during the marriage. She maintained that she had first realized this while in therapy in the spring of 2021. In addition, mother attached an affidavit to the motion in which adopted daughter accused father of sexually inappropriate behavior with her prior to the divorce. Mother framed these allegations of pre-divorce sexual abuse as appropriate for the court to consider only under the best-interests factors in 15 V.S.A. § 665, and not as evidence of a real, substantial, and unanticipated change in circumstances since the divorce.

¶ 7. Following a two-day evidentiary hearing, during which mother, father, and adopted daughter testified, the family division denied mother's request to modify parental rights and responsibilities. The family division concluded that mother's move to Florida was not

3

unanticipated because the May 2018 final divorce and custody order considered her potential move to Florida.[1]  The court however concluded that father's neglect of the children's medical needs was a real, substantial, and unanticipated change regarding legal custody and proceeded to weigh the statutory best-interests factors in 15 V.S.A. § 665.  The court found that mother was better able to provide medical care, that mother's housing situation was more stable than father's, and that father was not fostering the children's needs to speak freely without risking punishment or disapproval.  On the other hand, it found that father was better able to serve the children's developmental needs, and that mother chose to move to Florida despite knowing she would see the children less.  The court found that there was little evidence regarding the children's connections to school and community, which did not favor either parent.  It found that neither parent interfered with the children's contact with the other parent, which favored neither parent, and that "no issue [was] raised as to who has been the primary care provider."  The court therefore gave no weight to the primary-care-provider factor.  It found that the children's relationships with family members in Vermont and Florida did not favor father or mother.  It did not weigh mother's allegations regarding pre-divorce sexual abuse because father's alleged conduct took place before

---

[1]  The family division's order expressly analyzed legal custody but not physical custody, even though mother raised both in her motion to modify.  Mother does not appeal the court's failure to expressly analyze physical custody, though she notes that "the trial [c]ourt did not make a separate analysis of the burden and findings [regarding] legal versus physical rights and responsibilities."  See Wener v. Wener, 2016 VT 109, ¶ 21, 203 Vt. 582, 157 A.3d 1108 (concluding that when both physical and legal rights and responsibilities are raised by moving party, court must address each with separate findings and analysis).  When pressed at oral argument, mother's counsel reiterated the position she maintained at the evidentiary hearing, and which she also explained in her appellate brief: "[i]t is without question that [mother] could not use [father's] history of sexual violence to initiate the [m]otion to [m]odify parental rights and responsibilities."  Instead, mother appears to argue that the family division denied her motion regarding physical custody solely because it determined that her move to Florida was not unanticipated, not because it failed to exercise its discretion to consider any other change in circumstances.  Accordingly, she has failed to preserve the argument that any other event or events could have constituted changed circumstances as to physical custody.  See Miller-Jenkins v. Miller-Jenkins, 2010 VT 98, ¶ 28, 189 Vt. 518, 12 A.3d 768 (mem.) ("Failure to preserve issues below results in waiver [of those issues on appeal] . . . .").

4

the divorce and because the court found mother's claim that she only realized the abuse after the divorce not credible. The court did not explicitly consider adopted daughter's allegations at all, apparently because it concluded that they only concerned events predating the divorce, a period the court concluded was inappropriate to raise in a custody-modification proceeding. Moreover, the court made no finding as to the timing of the report to mother even though adopted daughter testified that she did not make mother aware of the specifics of the allegations until after the divorce.

¶ 8.      The court ultimately concluded that the § 665 factors did not favor either party, and therefore mother failed to meet her burden to demonstrate that modifying legal custody was in the children's best interests. It granted mother's motion to modify parent-child contact based on the parties' agreement that mother's relocation required a schedule change.[2]

¶ 9.      Mother raises several questions on appeal. She renews her argument that relocating to Florida meets the changed-circumstances threshold under 15 V.S.A. § 668(a), to modify physical rights and responsibilities. She contends that the court erred when it did not modify legal custody, even though more § 665(b) best-interests factors favored her. She also argues that the court erred by refusing to consider her and adopted daughter's allegations of pre-divorce sexual abuse in its analysis of the best-interests factors regarding legal custody.

¶ 10.    Father cross-appeals, arguing that the court abused its discretion when it concluded that his failure to sufficiently attend to the children's medical needs was a real, substantial, and unanticipated change in circumstance regarding legal custody.

I.

¶ 11.    Mother first argues that her move to Florida was unanticipated and meets the "heavy burden" of demonstrating the changed circumstances necessary to modify physical rights

---

[2] After the parties failed to agree to new terms, the family division ultimately issued a parent-child contact order on December 20, 2021. That order is not at issue in this appeal.

and responsibilities. Hawkes v. Spence, 2005 VT 57, ¶ 20, 178 Vt. 161, 878 A.2d 273; see also id. ¶ 1 ("[W]hen one parent has parental rights and responsibilities for a significant majority of the time, the [non-custodial parent] bears a heavy burden of demonstrating that the severe measure of transferring primary rights and responsibilities from one parent to another is necessary to serve the children's best interests."). We disagree.

¶ 12. "We will uphold a family court's decision as to whether there has been a real, substantial, and unanticipated change in circumstances unless the discretion of the lower court was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." Wener, 2016 VT 109, ¶ 17 (quotation omitted). Modifying a rights-and-responsibilities order is a two-step process. First, the moving party must demonstrate that a "real, substantial, and unanticipated change of circumstances" has occurred, and then "[o]nly after such a finding may the court move on to the question of wh[ether a modification] is in the best interests of the children." Gates v. Gates, 168 Vt. 64, 69, 716 A.2d 794, 798 (1998); see 15 V.S.A. §§ 665(b), 668(a). "For the purposes of § 668, an unanticipated change is one that was unexpected at the time of the divorce." Terino v. Bleeks, 2018 VT 77, ¶ 14, 208 Vt. 65, 195 A.3d 647 (emphasis omitted) (holding that mere fact of child aging and starting school, without more, cannot be "unanticipated"); accord Sundstrom v. Sundstrom, 2004 VT 106, ¶ 35, 177 Vt. 577, 865 A.2d 358 (mem.).

¶ 13. Mother argues that the question of whether her relocation is unanticipated is not whether "it is in the realm of possibility that a parent may relocate" at the time of the divorce, but rather whether the original custody order had mother's move "baked into" its conclusions. In support of this argument, mother cites spousal-maintenance cases from this Court, and contends that the unanticipated-change standard in those cases should be applied to custody-modification proceedings.

6

¶ 14.    In Atherton v. Atherton, the trial court incorporated the terms of a maintenance stipulation into a June 2017 final order which provided that husband would pay $1500 in monthly maintenance to wife.  2019 VT 15, ¶ 2, 209 Vt. 505, 208 A.3d 603.  At the time the order issued, husband was employed and made $5895 per month.  Husband was terminated in August 2017.  In September 2017, husband filed a motion to modify spousal maintenance under 15 V.S.A. § 758. At the evidentiary hearing, husband disclosed, for the first time, that he had received a "final written warning" from the employer in June 2016, one year before the final order.  He also disclosed that he had taken a leave of absence in April 2017.  The family division denied husband's motion, concluding that husband alone knew of the warning letter and the leave of absence when he signed the maintenance stipulation, and his termination one month after the final order was "a reasonable possibility" at the time of the final order.  Id. ¶ 7.  We reversed, holding that the proper test for evaluating whether a change is unanticipated is whether "subsequent developments depart substantially from the assumptions considered in the maintenance order."  Id. ¶ 15.  We explained that "[w]hile husband's termination may have been foreseeable based on his receipt of the warning letter and his leave of absence," the court's conclusion that husband could have known "at the time of the final order . . . whether he would be actually terminated as a result of these two factors, and what change in income would result" was incorrect because it "would have been based purely on conjecture."  Id. ¶ 16 (emphasis omitted).

¶ 15.    We need not decide whether the standard for unanticipated changes in the spousal-maintenance context applies to custody-modification proceedings instead of the standard we have long used, which is whether the change in circumstances was "not expected at the time of the divorce."  Sundstrom, 2004 VT 106, ¶ 35.  Under either standard, to the extent they are distinct, mother's relocation to Florida was not unanticipated because the divorce court made findings concerning her potential relocation and considered them when determining the children's best interests.  For example, the divorce court found that mother's support system was in Florida, and

7

that "in the event [mother] were to relocate to Florida, [mother] would be able to reside with her parents." It also found that she had been applying for employment in Florida prior to the issuance of the final divorce order. Indeed, the divorce court concluded that potential relocation to Florida did not weigh in favor of the children's best interests. Accordingly, the move to Florida was not a subsequent development "depart[ing] substantially from the assumptions considered in the [custody] order," Atherton, 2019 VT 15, ¶ 15, nor was it "unexpected" at the time of the custody order. Terino, 2018 VT 77, ¶ 14. The family division did not abuse its considerable discretion in concluding that the relocation did not satisfy the heavy burden necessary to modify physical custody. See Falanga v. Boylan, 2015 VT 71, ¶ 17, 199 Vt. 343, 123 A.3d 811 (holding that family division has "wide discretion" when determining whether changed circumstances exist); see also Hayes v. Hayes, 144 Vt. 332, 338, 476 A.2d 135, 139 (1984) (explaining that modification court can make "explicit reference" to findings contained in original custody order when appropriate).

II.

¶ 16. Father cross-appeals, arguing that the family court abused its discretion by concluding that his neglect of the children's medical needs was a "real, substantial, and unanticipated change in circumstances" as to legal custody. To the extent father has adequately briefed this argument, we discern no abuse of discretion in the family division's conclusion. See deBeaumont v Goodrich, 162 Vt. 91, 98, 644 A.2d 843, 847 (1994) (noting that "threshold decision for a motion to modify [custody] is discretionary" and that decision will be upheld absent discretion erroneously exercised, exercised on unfounded considerations or to an extent clearly unreasonable in light of evidence) (quotation omitted)).

¶ 17. The court made findings about father's post-divorce performance regarding the children's health and hygienic needs. The findings were supported by the evidence. Siegel v. Misch, 2007 VT 116, ¶ 10, 182 Vt. 623, 939 A.2d 1023 (mem.) ("We will uphold factual findings on appeal if any credible evidence in the record supports them, leaving credibility determinations

8

to the trier of fact." (citation omitted)). Father's appellate brief largely consists of arguments disputing the trial court's findings, including allegations of events purporting to clear his name that occurred after the family division's order, none of which father supports by citations to the record. See V.R.A.P. 28(a)(4)(A), (b) (requiring issues presented to be supported by "citations to the authorities, statutes, and parts of the record on which the [cross-appellant] relies"); see also Zorn v. Smith, 2011 VT 10, ¶ 22, 189 Vt. 219, 19 A.3d 112 (observing that while courts accord pro se litigants leeway in some matters, "they are still bound by the ordinary rules" of court procedure (quotation omitted)). However, "our review is confined to the record and evidence adduced at trial. On appeal, we cannot consider facts not in the record." Hoover (Letourneau) v. Hoover, 171 Vt. 256, 258, 764 A.2d 1192, 1193 (2000). Accordingly, we decline to disturb the family division's conclusion that father's neglect of the children's medical needs was a change in circumstances requiring a best-interests analysis under § 665(b).

III.

¶ 18. Mother next argues that the family division should have considered her and adopted daughter's post-divorce allegations of pre-divorce sexual abuse against father and incorporated the allegations into its best-interests analysis for modification of legal custody. We agree and hold that the family division may consider post-divorce allegations of sexual abuse against a parent occurring before the divorce to determine the children's best interests under 15 V.S.A. § 665(b), if the moving party was unaware of the allegations at the time of the divorce and the court finds the allegations credible. See Heffernan v. Harbeson, 2004 VT 98, ¶ 7, 177 Vt. 239, 861 A.2d 1149 ("Whether the family court properly construed the controlling statutes is a question of law that we review de novo.").

¶ 19. As an initial matter, the family division found that, like adopted daughter, mother's allegations only concerned conduct prior to the divorce, and it could not therefore consider them. However, the court credited father's testimony that mother had been in therapy for childhood

sexual abuse for "years," and found mother's allegation that she only realized husband's conduct was abuse while in therapy in 2021 not credible. Therefore, as we do not reweigh credibility determinations on appeal, our discussion focuses solely on adopted daughter's allegations. See In re S.B., 174 Vt. 427, 429, 800 A.2d 476, 479 (2002) (mem.) (explaining that Supreme Court does not second-guess family division or reweigh evidence).

¶ 20. We have explained that, assuming the court first finds changed circumstances sufficient to reach the best-interests factors, a modification "court must reassess the divorce order's allocation of parental rights and responsibilities in light of "all relevant periods of the child's life." Sochin v. Sochin, 2005 VT 36, ¶ 10, 178 Vt. 535, 537, 872 A.2d 373, 377 (quotation omitted)). To this end, the Legislature has provided that the family division must consider "evidence of abuse . . . and the impact of the abuse on the child and on the relationship between the child and the abusing parent" when allocating parental rights and responsibilities. 15 V.S.A. § 665(b)(9). The family division may find that abuse which occurred in the pre-divorce period continues to impact the child and the child's relationship with the abusing parent after the divorce. See id. This is not at odds with our explanation that "[f]or purposes of a modification motion . . . the most relevant period is that between the divorce and the filing of the motion to modify." deBeaumont, 162 Vt. at 101, 644 A.2d at 849.

¶ 21. Moreover, mother could not be expected to raise an issue at the time of divorce of which she was unaware, and which presently bears on the children's best interests. See In re Burns 12 Weston St. NOV, 2022 VT 37, ¶ 16, __ Vt. __, __ A.3d __ (explaining in context of claim preclusion that parties are not precluded from litigating "in the present what [they] had no opportunity to do in the past" (quotation omitted)). We have explained that no final divorce decree can account for "future contingenc[ies]," Knutsen v. Cegalis, 2009 VT 110, ¶ 10, 187 Vt. 99, 989 A.2d 1010, which indeed is the purpose underlying the custody-modification statutes. See deBeaumont, 162 Vt. at 100, 644 A.2d at 849 ("The whole point of the modification process is

10

that changed circumstances may have made the initial decision inappropriate, so a reexamination of the interests of the children is warranted." (citing 15 V.S.A. § 668)). First learning after the divorce of abusive pre-divorce conduct committed by a spouse on a family member is one such "future contingency" which may continue to impact the child and the child's relationship with the abusive parent. See 15 V.S.A. § 665(b)(9). The focus of the inquiry is the post-divorce impact of the "evidence of abuse" on the child and the child's relationship with the abusing parent, not necessarily the impact on the child and the child's relationship with the abusing parent in the pre-divorce period. See id. Furthermore, since sexual abuse occurring in a parent's home after the divorce is not in a child's best interests, see Siegel, 2007 VT 116, ¶¶ 1, 13, it follows that pre-divorce sexual abuse which is discovered by the moving party only in the post-divorce period is not either.

¶ 22. Here, the court did not weigh § 665(b)(9) because "mother raised claims of physical abuse of her and emotional abuse of the children in the pre-divorce period," and it "did not find any admissible evidence to support those claims." However, the family division had before it adopted daughter's sworn testimony and affidavit detailing both the substance of father's alleged conduct and when she disclosed the allegations to mother. It was error for the court not to make specific findings regarding when mother learned about adopted daughter's allegations and whether the allegations were credible before analyzing the impact of the ninth factor on the children's best interests. See Poulin v. Upham, 149 Vt. 24, 27, 538 A.2d 181, 183 (1987) (reversing and remanding where court failed to make adequate findings on "critical issue" as required by § 665(b)).

¶ 23. Accordingly, we reverse and remand the family division's best-interests analysis for the court to make findings as to adopted daughter's allegations and reweigh the § 665(b) factors for modifying legal custody. Batton v. Holland, 2018 VT 54, ¶¶ 1, 26, 207 Vt. 517, 192 A.3d 1257 (reversing and remanding best-interests analysis where Supreme Court affirmed family division's

11

changed-circumstances analysis); <u>Maurer v. Maurer</u>, 2005 VT 26, ¶ 16, 178 Vt. 489, 872 A.2d 326 (mem.) (same).[3] Given our conclusion, we need not address mother's argument that because more best-interests factors favored her, the court should have modified legal custody.

<u>Reversed and remanded for further proceedings consistent with this opinion</u>.

FOR THE COURT:

_____

Associate Justice

---

[3] Though it is likely that adopted daughter's allegations, if credible and not disclosed to mother prior to the divorce, could constitute changed circumstances under 15 V.S.A. § 668(a), as already noted mother has waived the argument on appeal with respect to physical custody. See <u>supra</u>, ¶ 7 n.1. Likewise, because mother does not challenge the family division's threshold finding that father's neglect of the children's medical needs was a real, substantial, and unanticipated change in circumstances sufficient to modify legal custody, and father fails to convince us the court abused its discretion in doing so, we must leave this question to be answered for another day.