2003 VT 18

**Kimberly A. HABECKER v. Christopher GIARD**

[820 A.2d 215]

No. 02-334

¶ 1. February 14, 2003. Mother appeals from a Chittenden Family Court order granting legal and physical custody of the parties' four children to father. Mother, who is not married to father, claims that the court erred by: 1) finding a real, substantial and unanticipated change of circumstances when the evidence did not support such a finding; 2) concluding that transfer of physical custody and legal parental rights and responsibilities to father was in the children's best interests; and 3) improperly placing the bur-

den upon mother to file a motion to modify custody order prior to relocating. We affirm.

¶ 2. The family court found the following facts. Mother and father lived together with their children for many years in Vermont, Maine, and New Hampshire; mother and father were never married. In 1996, when the parties had three children, they separated and entered into a stipulation and final order regarding parental rights and responsibilities. Under this order, mother had sole physical custody, and the parties had joint legal custody of the three children. Father was awarded visitation rights on every other weekend and two full weeks during the year, with vacations and holidays to be mutually agreed upon by the parties. In practice, father has the children for an additional three hours one evening per week. After the date of the agreement, mother and father later reunited, and their fourth child was born in 1998. In 2000, the parties separated again. The court issued an order in 2001, which granted mother sole physical and legal custody of the parties' fourth child.

¶ 3. In 2001, mother began to contemplate a move from Vermont to Arizona, and she mentioned this to father in September. In November 2001, mother sent father a certified letter indicating her intention to relocate to Arizona, but he did not receive it. In January 2002, mother applied for a job in the same school system for which father works. Father was aware of this fact, which led him to assume mother had decided to stay in Vermont. One month later, mother became engaged to a man living in Arizona whom she apparently met over the Internet. On March 5, 2002, mother sent father a letter stating that she and the children were moving to Arizona around June 1. One week later, mother wrote father again to notify him that the move would take place on April 1. On March 20, 2002, father filed a motion to modify parental rights and re-

sponsibilities accompanied by an emergency motion to prevent the removal of the children from Vermont. The court granted father's emergency motion, denied mother's motion to reconsider, and held hearings on the motion to modify on May 13 and June 21, 2002.

¶ 4. The family court issued a twenty-five page, fact-specific ruling in which it granted father's motion to modify. The court awarded legal and physical custody of all four children to father, finding that 1) the moving party, father, made a showing of a real, substantial and unanticipated change of circumstances, and 2) a modification of the prior parental rights and responsibilities determination was in the best interests of the children.

¶ 5. In order to modify custody, a moving party must first make a threshold showing of a "real, substantial and unanticipated change of circumstances." 15 V.S.A. § 668; *deBeaumont v. Goodrich*, 162 Vt. 91, 95, 644 A.2d 843, 845 (1994). The court has discretion in determining a change of circumstances for custody purposes. *Lane v. Schenck*, 158 Vt. 489, 494, 614 A.2d 786, 788 (1992). If the party makes this threshold showing, then the court may change custody only when the best interests of the child so require. 15 V.S.A. § 668; *deBeaumont*, 162 Vt. at 95, 644 A.2d at 845-46; *Lane*, 158 Vt. at 497, 614 A.2d at 790. The burden for such a showing remains on the moving party, and, due to the value of stability in a child's life, it is a heavy one. *deBeaumont*, 162 Vt. at 102, 644 A.2d at 850.

I.

¶ 6. Mother argues that the court erred in holding that father made the required threshold showing of a real, substantial and unanticipated change of circumstances. First, we agree with mother that relocation alone does not automatically constitute a change of circumstances. We have previously made clear that "relocation without more is *not* per se a substantial change of circumstances." *Id.* at 97,

644 A.2d at 847 (emphasis added); accord *Gazo v. Gazo*, 166 Vt. 434, 440, 697 A.2d 342, 345 (1997). It is not appropriate for the court to substitute its judgment for that of the custodial parent with respect to the wisdom of a decision to relocate, *McCart v. McCart*, 166 Vt. 629, 630, 697 A.2d 353, 354 (1997) (mem.), nor should the court choose where the custodial parent and children must reside. See *Gazo*, 166 Vt. at 441, 697 A.2d at 346.

¶ 7. Our recent discussion of the relocation issue in *Hoover v. Hoover*, 171 Vt. 256, 259, 764 A.2d 1192, 1194 (2000), a case in which the parents had shared legal *and* physical custody, noted:

> [W]hen childrearing and its concomitant decision-making are shared, relocation to a remote location by one parent requires at the very least a reassessment of the custodial arrangement and, because of the practicalities involved in shared parenting, will often necessitate a change in custody.

While the trial court recognized that *Hoover* does not directly address the issue of changed circumstances, the trial court construed our observation that relocation to a distant location "requires at the very least a reassessment of the [shared] custodial arrangement" to mean that the move mother contemplates in this case is "per se a change in circumstance." *Hoover*, however, did not alter our previous holdings that where there is a custodial parent, relocation without more is not per se a substantial change of circumstances. For example, in *Dunning v. Meaney*, 161 Vt. 287, 288, 640 A.2d 3, 4 (1993), as in the case before us, the mother had physical custody, and the parents shared legal custody. There, we held that the custodial mother's "move itself does not amount to a real, substantial or unanticipated change in circumstances justifying modification of the

physical rights and responsibilities." *Id.* at 290, 640 A.2d at 5.

¶ 8. Reassessment of the custodial arrangement was, however, clearly warranted under the facts of this case. Notwithstanding mother's focus on the court's reliance on relocation, the issue before us is whether there was sufficient evidence below to support a threshold showing of a real, substantial and unanticipated change of circumstances. We conclude that there is such evidence, and therefore uphold the decision in this regard. Cf. *In re R.L.*, 163 Vt. 168, 174-75, 657 A.2d 180, 185 (1995) (upholding involuntary hospitalization order where the record was clear that voluntary treatment of patient was not possible even though the court's findings and conclusions did not specifically focus on whether voluntary treatment was possible).

¶ 9. While mother would have us examine the record below by looking solely to relocation, a review of the evidence before the trial court demonstrates that the contemplated move was but a single aspect of a deteriorating and unanticipated change in the context of mother's relationship to her family. The court, for example, was clearly disturbed — in light of mother's past suicide threats and use of anti-depressants — by testimony that mother was "calling in her own prescriptions" from the doctor's office where she worked. Although mother denied such conduct, the court did not find mother's denial to be credible and concluded that mother engaged in "apparently criminal activity." Mother's sister testified that mother's behavior had become unpredictable and emotionally abusive to the children. The court had before it a recent letter from mother to father stating that he would not be allowed to see the children if he persisted in allowing them to have contact with their grandmother or aunts. The court found that in the fall of 2001 she made statements to father that she "can't take it anymore" and said,

"Will you make sure the kids remember me?" In light of the record and the court's findings, it is apparent that evidence of mother's relocation plans were symptomatic of a substantial and unanticipated change in mother's mental state, and the proposed relocation was not, per se, a change of circumstances in and of itself. There is sufficient evidence in this record to support a finding of a real, substantial and unanticipated change of circumstances.

## II.

¶ 10. Mother also argues that the family court improperly concluded that a transfer of physical and legal parental rights and responsibilities to father was in the children's best interests. The best interests of the child must be the court's paramount consideration in awarding custody. *Begins v. Begins*, 168 Vt. 298, 301, 721 A.2d 469, 471 (1998). The court must take into account all relevant evidence, including the factors found in 15 V.S.A. § 665(b). *Cloutier v. Blowers*, 172 Vt. 450, 452, 783 A.2d 961, 963 (2001). Within the child custody context, however, the family court has broad discretion, and we will not set aside the family court's conclusions if supported by the findings. *Payrits v. Payrits*, 171 Vt. 50, 52-53, 757 A.2d 469, 472 (2000). Mother disputes only the conclusions of the family court and not the findings. In its ruling, the family court made findings regarding each of the nine factors in 15 V.S.A. § 665(b), and determined that factors one, three, four, and nine did not substantially favor either parent and that factor eight was not relevant since the court was not considering shared or divided legal and physical custody. Thus, the court primarily relied upon the second, fifth, and seventh factors, as well as reviewing additional evidence.

¶ 11. As the trial court did here, a court must consider the second factor: "the ability and disposition of each parent to assure that the child receives adequate food, clothing, medical care, other material needs and a safe environment." 15 V.S.A. § 665(b)(2). After reviewing the evidence, the family court concluded, "[F]ather appears better suited to providing a safe environment than does mother." The court found that

> [m]other has exposed the children to a boyfriend who pushed mother in front of the children, attempted to break into her home in the middle of the night, and apparently threatened to kill her. . . . mother has hit one of the children with a belt and slapped another in the face.

¶ 12. The fifth factor, "the ability and disposition of each parent to foster a positive relationship and frequent and continuing contact with the other parent, including physical contact, except where contact will result in harm to the child or to a parent," *id.* § 665(b)(5), is also an important statutory factor that must guide the court. *Begins*, 168 Vt. at 301, 721 A.2d at 471. Here, the family court concluded that "father is much more likely to assure a positive relationship and ongoing contact with mother than the reverse" after finding that mother engaged in conduct where she repeatedly threatened father that he would never see his children again.

¶ 13. The seventh factor, "the relationship of the child with any other person who may significantly affect the child," 15 V.S.A. § 665(b)(7), was a critical component of the court's decision. The court noted that the children's relationships with their maternal and paternal grandparents and aunts were a source of stability for the children despite the discord between their parents. The court concluded that to deprive the children of these longstanding family ties and frequent contacts would be a "great loss to the children."

¶ 14. Mother argues that the court failed to give enough weight to the finding that mother was the primary care provider. Although a primary care provider finding is entitled to great weight, *Nickerson v. Nickerson*, 158 Vt. 85, 89, 605 A.2d 1331, 1333 (1992), this does not create "a rule that the primary custodian will be awarded custody as long as the parent is fit." *Payrits*, 171 Vt. at 54, 757 A.2d at 472 (internal quotation marks omitted). Instead, the weight accorded to the primary care provider factor depends upon the quality of the relationship between the child and custodian, as well as the likely effect that a change of custodian will have on the child. *Johnson v. Johnson*, 163 Vt. 491, 494, 659 A.2d 1149, 1151 (1995). "Only when there is no evidence of that effect should the court ordinarily find that the child must remain with the primary caregiver if fit." *Payrits*, 171 Vt. at 55, 757 A.2d at 473 (internal quotation marks omitted). After balancing the 15 V.S.A. § 665(b) factors, the court awarded legal and physical custody of all four children to father, concluding:

> [F]ather is better able to place the children's needs ahead of his own; offers a more stable and established home, community, and extended family support system; is better able to provide for the physical safety of the children; and is much more willing to foster communication with mother and a positive relationship between her and the children than she would offer with regard to him.

The court made the appropriate inquiry regarding the factors and did not abuse its discretion by concluding that a grant of custody to father would serve the best interests of the children. Thus, we affirm the court's decision.

## III.

¶ 15. Finally, mother contends that the trial court improperly placed upon her the burden of filing a motion to modify prior to relocating and that this resulted in prejudice. Mother bases her argument on a footnote in the family court's ruling, which reads in part:

> From the court's perspective, mother was planning to unilaterally modify the order by moving, and should have filed a motion to modify herself before doing so. As noted below, a move across the country essentially eliminates the possibility of continued joint legal custody, as well as requiring revision to the parent-child contact schedule. Thus, mother would have been in violation of the existing order had she moved, and she should therefore have moved to modify before doing so.

Vermont does not have a statute that requires the custodian to make an affirmative showing of cause to justify removal nor a statute discouraging relocation. *Lane*, 158 Vt. at 497, 614 A.2d at 790. Mother was not prejudiced by the footnote in the family court's ruling however, as it is clear that the trial court considered father the moving party and properly placed the burden on him.

*Affirmed.*

Note: Justice Morse sat at oral argument but did not participate in this decision.