ROBINSON, J., dissenting.
 

 ¶ 27. I believe the majority has strayed from the applicable standard of review as well as the Legislature's directions concerning the "best-interests" analysis. In particular, the majority fails to give due deference to the weight the trial court assigns to the child's relationship with another person who may significantly affect the child, redefining the statutory best interests standard in the process. In addition, the majority substitutes its own assessment of mother's likely future efforts to foster a positive relationship between D.B. and father for the trial court's. For these reasons, I respectfully dissent.
 

 ¶ 28. Our standard of review in these cases is well established, both as to the trial court's findings of fact, and its exercise of discretion in awarding parental rights and responsibilities and parent-child contact on the basis of its findings. With respect to factual findings, we will uphold the trial court's findings "if they are supported by credible evidence."
 
 Maurer v. Maurer
 
 ,
 
 2005 VT 26
 
 , ¶ 10,
 
 178 Vt. 489
 
 ,
 
 872 A.2d 326
 
 (mem.). In evaluating the evidence, we must "make all reasonable inferences in support of the court's judgment."
 
 Bevins v. King
 
 ,
 
 147 Vt. 203
 
 , 206,
 
 514 A.2d 1044
 
 , 1046 (1986). We have emphasized that it is the exclusive role of the trial court-not this Court-to assess the credibility of witnesses and to weigh the evidence. See
 
 Kanaan v. Kanaan
 
 ,
 
 163 Vt. 402
 
 , 405,
 
 659 A.2d 128
 
 , 131 (1995) (explaining that trial court's findings are entitled to substantial deference due to its unique position to assess credibility of witnesses and weigh evidence);
 
 Payrits v. Payrits
 
 ,
 
 171 Vt. 50
 
 , 54,
 
 757 A.2d 469
 
 , 472-73 (2000) ("[T]he credibility of the witnesses, the weight of the evidence, and its persuasive effect are questions for the trier of fact ....").
 

 ¶ 29. Under this framework, a trial court has broad discretion in determining a child's best interests. See
 
 Myott v. Myott
 
 ,
 
 149 Vt. 573
 
 , 578,
 
 547 A.2d 1336
 
 , 1339-40 (1988). This Court cannot set aside the trial court's decision "because we would have reached a different conclusion from the facts."
 

 Id
 

 . at 578
 
 ,
 
 547 A.2d at 1339
 
 . We have held that the trial court should consider all the statutory factors in 15 V.S.A. § 665(b) in evaluating parental rights and responsibilities and parent-child contact.
 
 Bissonette v. Gambrel
 
 ,
 
 152 Vt. 67
 
 , 69,
 
 564 A.2d 600
 
 , 601 (1989). But we generally defer to the trial court as to the particular weight each factor warrants in the context of a particular case.
 
 [5]
 
 See
 
 Myott
 
 ,
 
 149 Vt. at 578
 
 ,
 
 547 A.2d at 1339
 
 ("The trial court has broad discretion in a custody matter, and we must affirm unless the discretion is erroneously exercised, or was exercised upon unfounded considerations or to an extent clearly unreasonable in light of the evidence." (quotation omitted) ).
 

 ¶ 30. Finally, "[t]he focus of the [inquiry] must be the best interest of the child, not equity between the parties."
 
 Bissonette
 
 ,
 
 152 Vt. at 70
 
 ,
 
 564 A.2d at
 
 602 ; see also
 
 Knutsen v. Cegalis
 
 ,
 
 2016 VT 2
 
 , ¶ 30,
 
 201 Vt. 138
 
 ,
 
 137 A.3d 734
 
 (" 'The best interests of the child remain paramount in all custody decisions, and a decision to transfer custody cannot be based on a desire to punish the alienating parent.' " (quoting
 
 Miller-Jenkins v. Miller-Jenkins
 
 ,
 
 2010 VT 98
 
 , ¶ 25,
 
 189 Vt. 518
 
 ,
 
 12 A.3d 768
 
 (mem.) ) ).
 

 ¶ 31. With these standards in mind, I believe the majority's analysis falls short in addressing the two factors most in play in this case. First, the majority improperly faults the trial court for giving
 
 too much
 
 weight to the relationship between a child and any other person who may significantly affect the child, even though the trial court clearly concluded that in the circumstances of this family-with an eye on this child's best interests-this factor was dispositive. In doing so, the majority reads out the Legislature's express instruction that the court must consider the relationship between the child and other people who may significantly affect the child. 15 V.S.A. § 665(b)(7). Second, the majority concludes from its independent review of the evidence that the trial court did not give
 
 enough
 
 weight to mother's inability to foster a positive relationship between D.B. and father. In short, the majority would strike a different balance in this case rather than deferring to the judgment of the factfinder who had the opportunity to observe the witnesses and assess the situation.
 

 I. The Child's Relationship with Maternal Grandfather and § 665(b)(7)
 

 ¶ 32. The Legislature has included among the factors courts must consider in the best-interests analysis "the relationship of the child with any other person who may significantly affect the child," 15 V.S.A. § 665(b)(7), and this Court has frequently recognized that a child's relationship with another adult associated with one of the parents-typically a partner or family member-can be a critical factor in assessing the child's best interests. In the case of
 
 Harris v.Harris
 
 ,
 
 162 Vt. 174
 
 ,
 
 647 A.2d 309
 
 (1994), for instance, the mother argued that the trial court had erroneously awarded the father custody based on the paternal grandmother's role caring for the child, and that the court had essentially chosen the paternal grandmother over the mother as the custodial parent. The paternal grandmother dressed the child, fed him breakfast after the father went to work, cared for him during the day until the father got home, and more often than not served the father and the child dinner. Frequently, the child slept at her house. This Court affirmed the trial court's award of custody to the father even though it concluded that the mother had previously been the child's primary caregiver.
 

 Id
 

 . at 177-79
 
 ,
 
 647 A.2d at 312
 
 . The Court noted the trial court's findings that the paternal grandmother played a significant role in the child's life and development and concluded that "[t]he father should not be disadvantaged for his fortune in having a mother who operates a day care facility nearby and who is willing and eager to care for his son while he is at work."
 

 Id
 

 . at 179
 
 ,
 
 647 A.2d at 313
 
 .
 

 ¶ 33. In
 
 Habecker v. Giard
 
 , this Court likewise affirmed an order transferring custody from the mother to the father upon the mother's relocation based in
 large part on the child's relationships with aunts and grandparents who remained in Vermont.
 
 2003 VT 18
 
 , ¶¶ 13-14,
 
 175 Vt. 489
 
 ,
 
 820 A.2d 215
 
 (mem.). Describing the trial court's analysis, which this Court affirmed, we wrote:
 

 The seventh factor, "the relationship of the child with any other person who may significantly affect the child," was a critical component of the court's decision. The court noted that the children's relationships with their maternal and paternal grandparents and aunts were a source of stability for the children despite the discord between their parents. The court concluded that to deprive the children of these longstanding family ties and frequent contacts would be a great loss to the children.
 

 Id
 
 . ¶ 13 (quotation and citation omitted); see also
 
 deBeaumont v. Goodrich
 
 ,
 
 162 Vt. 91
 
 , 99,
 
 644 A.2d 843
 
 , 848 (1994) (relying in part on fact that award of custody to father "allowed continuing contact with the parental grandparents, who had become very important in the lives of the children").
 

 ¶ 34. The majority doesn't deny that this factor may be significant, but seems to suggest that it shouldn't be
 
 too
 
 significant. It's hard to understand why not. The majority does not take issue with the trial court's finding that D.B. has greater opportunity for enriching activity in North Carolina, due largely to the efforts of D.B.'s maternal grandfather who spends a tremendous amount of time with D.B. In describing maternal grandfather as D.B.'s "fictive" parent, the trial court emphasizes the critical role grandfather plays in D.B.'s life. This is precisely the kind of relationship courts are supposed to consider and value pursuant to § 665(b)(7). In a truly child-centered best-interests analysis, the fact that D.B.'s relationship with grandfather is so central to his life would be a reason to assign more, not less, weight to this factor. I may not have assigned this factor the same weight as the trial court, but it was clearly well within its discretion in concluding that this factor weighed heavily enough to tip the balance.
 

 ¶ 35. The majority's reliance on a decision from 1960 addressing a very different issue, at a time before the Legislature even adopted the § 665(b) factors, is misplaced. In
 
 Miles v. Farnsworth
 
 ,
 
 121 Vt. 491
 
 ,
 
 160 A.2d 759
 
 (1960), a court had originally awarded custody of a minor child to his father,
 
 subject to the condition that the child live with his paternal grandparents
 
 . When the child was ten, the mother sought modification of custody. In affirming the trial court's change of custody to the mother, this Court considered the mother's remarriage, her new home, and her changed life circumstances, as well as the paternal grandmother's advancing age and likely inability to keep up with the needs of an active ten-year-old.
 

 Id
 

 . at 494-95
 
 ,
 
 160 A.2d at 761
 
 . The Court noted that the evidence and findings disclosed that the child had been in the actual care of his paternal grandmother since the time of the divorce; although the father had nominal custody and loved the child, he did little to supervise and train him.
 

 Id
 

 . at 493
 
 ,
 
 160 A.2d at 760
 
 . After discussing the grandmother's aging, and its effect on her ability to continue to parent the child, the Court said that while "the real issue determined by the court below was whether the mother or the grandmother should have the actual and active custody of the boy," the grandmother was actually "a third person to this marriage relationship."
 

 Id
 

 . at 495
 
 ,
 
 160 A.2d at 761
 
 . Comparing the mother to the father, the court awarded custody to the mother.
 

 ¶ 36. This case is inapplicable here for three reasons. First and foremost, in
 
 Miles
 
 the grandmother had been acting as the child's primary care provider for years with only nominal participation by the father,
 and pursuant to a court order designed to ensure that the child lived with her, despite the nominal award of custody to father (grandmother's son). In that context, the Court's statement that the relevant comparison should be between mother and father, and that as between mother and paternal grandmother mother must prevail, made sense. The Court was
 
 not
 
 suggesting that the grandmother's significant role in the child's life should not be considered in that balance, but was recognizing that in that case, the father really had no significant parental role. In this case, by contrast, grandfather is clearly a central-perhaps the most important-adult figure in D.B's life, but mother has her own home and, as the trial court expressly found, has been D.B.'s primary parent for most of his life. There is no basis in this case to conclude that mother is only "nominally" seeking parental rights and responsibilities while grandfather is the actual primary parent. Mother may rely heavily on grandfather to provide significant parenting support-just like the father in
 
 Harris
 
 , above-but, as the trial court found, she has acted and continues to act in a parental capacity. By invoking
 
 Miles
 
 in this context, the majority seems to hold that the very significant role of another adult in D.B.'s life cannot be a scale-tipping factor in the best-interests analysis;
 
 Miles
 
 does not support that assertion.
 

 ¶ 37. Second, and significantly, this case from 1960 long preceded the statute enumerating the best-interests factors-including § 665(b)(7) -that the trial court must consider in assigning parental rights and responsibilities. The
 
 Miles
 
 decision makes no reference to any statute; it was decided under a different framework. By using
 
 Miles
 
 in this way, and by suggesting that D.B.'s relationship with another adult can never tip the balance, the majority essentially eliminates § 665(b)(7) as a true factor in the best-interests analysis.
 

 ¶ 38. Third, the
 
 Miles
 
 Court's assessment of the weight to be afforded to the child's relationship with the grandmother was driven to a large extent by the Court's recognition that due to her age, the grandmother was not in a position to continue in the role of primary caregiver. The Court did not expressly discuss the weight to be given to the child's relationship with the grandmother, as the statute did not at the time require consideration of this factor, but its discussion makes clear that because of the grandmother's age and presumed inability to keep up with the child, his relationship with her was not due much weight.
 

 ¶ 39. Nor here is the trial court's analysis undermined by its recognition that if something happens to grandfather, the balance would be different. The court was clear in its decision that the baseline expectations against which a future motion to modify parental rights and responsibilities should be assessed include grandfather's continued participation in D.B.'s life. If grandfather moves or stops engaging with D.B., that would be a changed circumstance, potentially triggering a modification of the custody arrangement under 15 V.S.A. § 668. This doesn't undermine the court's decision; it reinforces that the court thoughtfully weighed the relevant factors and concluded that, given the current state of affairs, keeping D.B. with mother, in large part so that D.B. would have the continued benefit of his relationship with grandfather, was in the child's best interests. Any time § 665(b)(7) is a factor in the best-interests analysis, the child's best interests are subject to change based on the presence of a third party. That's inherent in the factor itself.
 

 II. § 665(b)(5) and Mother's Failure to Foster a Positive Relationship
 

 ¶ 40. The majority's scrutiny of the trial court's assessment of mother's failure to
 foster a positive relationship with father likewise departs from the standard of review and our own recent precedent. In particular, the majority faults the trial court for its expressed hope and belief that mother's behavior in undermining D.B.'s relationship with father will change, and it asserts that the trial court's conclusion on this point is unsupported by the evidence.
 

 ¶ 41. The majority's approach in this case stands in stark contrast to the Court's recent opinion in
 
 Knutsen
 
 ,
 
 2016 VT 2
 
 ,
 
 201 Vt. 138
 
 ,
 
 137 A.3d 734
 
 . In that case, the trial court found that by promoting the false belief that the mother had abused the child, the child's father and stepmother had effectively destroyed the child's formerly good relationship with his mother.
 
 Id
 
 . ¶¶ 13-14. After recounting a long history of intransigence by the father and stepmother, including their continued refusal even during the appeal before the Court to back away from their claims of abuse by the mother, the Court affirmed the trial court's continued award of parental rights and responsibilities to the father and its temporary suspension of parent-child contact with his mother.
 
 Id
 
 . ¶ 33. The Court acknowledged that the trial court had considered the relevant statutory factors and provided a reasoned basis for its conclusions.
 
 Id
 
 . Noting the mother's frustration at the father's failure to cooperate in facilitating any contact between her and the child, this Court wrote, "We note that mother is not without recourse should father and stepmother continue to interfere with her attempts at reunification or should they defy the trial court's orders."
 
 Id
 
 . ¶ 34. In addition to deferring to the factfinder's assessment concerning the child's best interests, the majority was willing to support the trial court's hope, despite its own skepticism, that
 
 this time
 
 the father and stepmother would be sufficiently chastened by the court's admonition that they would comply with its order to take specified steps to facilitate the child's reunification with his mother.
 

 ¶ 42. In this case, by contrast, the trial court had ample basis to believe that the future would not mirror the past. The trial court observed that mother's partner and grandfather, apparently the two most influential adults in her life, had been unaware of her prior misbehavior vis-a-vis father. The court clearly had confidence that they would hold mother's feet to the fire. Moreover, the court made it clear to all parties that if mother did not change her ways, the court would reassign parental rights and responsibilities. By conducting its own review of the record to reach a contrary conclusion, the majority has failed to afford the trial court the deference it is due. Although the majority may have weighed the evidence differently, the trial court's expectation that mother would improve her conduct had ample support in the record.
 

 ¶ 43. For the above reasons, I would affirm the trial court's decision.
 

 Even the weight to be afforded the "primary care provider" factor, which we have frequently identified as the most important, is largely within the discretion of the trial court. See, e.g.,
 
 Habecker v. Giard
 
 ,
 
 2003 VT 18
 
 , ¶ 14,
 
 175 Vt. 489
 
 ,
 
 820 A.2d 215
 
 (mem.) (recognizing that "a primary care provider finding is entitled to great weight," but noting that "the weight accorded to [this] factor depends upon the quality of the relationship between the child and custodian, as well as the likely effect that a change of custodian will have on the child").