VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     24-AP-051



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SEPTEMBER TERM,   2024

Andrew Roy\* v. Crystal Roy

} APPEALED FROM:
}
} Superior Court, Caledonia Unit,
} Family Division
} CASE NO. 21-DM-00192
Trial Judge: Robert R. Bent (Ret.)

In the above-entitled cause, the Clerk will enter:

Father appeals the family division's award of parental rights and responsibilities in its final divorce order.  We affirm.

The family division made the following findings in the final order.  Father and mother met in 2012 in New Jersey and married that same year.  After they were married, the parties moved to Vermont, where father had been offered work.  They lived in Vermont throughout the marriage.  They have one daughter, who was born in 2018.

The court credited the testimony of a friend who lived with the parties in early 2020 that father was controlling and disrespectful toward mother during the marriage.  For example, after mother completed a night shift, father would vacuum in the early morning.  When the friend suggested it was too early to vacuum, father said that a few hours' sleep was sufficient for mother.  Father also locked mother out of the house once when she told him that she would not cook because she was too tired.  In March 2020, the friend overheard a heated argument between the parties.  He heard mother tell father to let go of her.  He tried to open the door to the room where the parties were arguing, but father blocked the door.  He saw that father had his hands on mother's wrists.  The friend protested, and father told him to get out, stating that if he wasn't gone in twenty-four hours, father would shoot him.

In January 2021, the parties sold their home and purchased an RV with the intent of traveling to Florida to look for work.  Because of the difficulties in the parties' relationship, mother had been working long shifts in Vermont and taking daughter to New Jersey to stay with maternal grandmother on weekends.  In February 2021, father filed for divorce.  He sought custody of daughter, asserting that mother posed a risk of harm due to substance abuse and neglect.  The court did not act on these allegations but ordered that the child not be removed from Vermont without court permission or the permission of the other party.  Mother had no family or strong friendships in Vermont, so she stayed with her mother in New Jersey for the

first few months of the divorce action. She did not have contact with daughter during this period.

The court found that the parties had otherwise shared parenting responsibilities during the marriage. Mother spent more time caring for daughter when she was younger. Mother took several months off from work to be with daughter. She cared for her during weekdays because she worked long shifts as a nurse on weekends. Father cared for daughter on weekends.

The parties agreed to a temporary parenting plan in June 2021, which they followed while the divorce was pending. The agreement provided for shared parental rights and responsibilities and established a two-week-on, two-week-off schedule for parent-child contact, with custody exchanges in Trumbull, Connecticut every other Sunday. The court found that this schedule was too burdensome on the child and parents and that it would not be in daughter's best interests to continue it.

Father enrolled daughter in a preschool program without consulting mother. He also enrolled the child with a therapist and chose a pediatrician for daughter's asthma without consulting mother. Mother did not seek to find other doctors for daughter in New Jersey, believing that it would be redundant and possibly counterproductive. The court found that these instances evidenced father's penchant for control.

The temporary order provided that each parent would have reasonable phone or video contact with daughter when she was in the custody of the other parent between 6:00 and 7:30 p.m., unless the parties agreed otherwise. Mother was more flexible than father about this arrangement. On several occasions, mother asked father to defer his daily call due to scheduling issues, but father was adamant about maintaining his daily time. On one occasion, he called local police to do a welfare check because he did not believe mother's statement that the child was at her grandmother's house sleeping at the time he usually called.

Daughter has serious asthma and has been hospitalized several times with symptoms. Her doctors recommended that daughter not live with dogs or cats. Mother continued to keep a dog, a five-pound Maltese which she asserted was hypoallergenic. Father forwarded concerns from the doctor about the dog to mother, but mother was skeptical of father's version of what the doctor said. She did not attempt to contact the doctor directly. She stated that if granted custody, she would leave the dog with her mother and move to a different home.

Daughter did not receive all recommended vaccinations. Father did not want her to be vaccinated when she was little because he did not believe in them. Mother did not dispute this decision because she did not want to fight with father.

Father enrolled daughter in piano lessons and ensured that she practiced regularly. Father's friends and neighbors testified that he attended to daughter closely and that she was well-dressed and groomed when in his care.

Mother indicated that she was willing to move back to Vermont if her request for sole custody was not granted. The court found that "mother's willingness to return to Vermont to maintain ties with her daughter despite doing so [sic] would cause her unhappiness to be creditable as to her relationship with her child."

In awarding parental rights and responsibilities, the court assessed the factors set forth in 15 V.S.A. § 665(b). The court found that that both parents could adequately care for daughter if

2

granted sole custody and were similarly situated with regard to most of the factors. It found mother had been deficient in her treatment of daughter's asthma but concluded that she had withdrawn from the role she should have taken because she wanted to avoid conflict with father. The court expressed concern about father's "proclivity for control" and how it might affect daughter as she aged. The court found that father's controlling nature negatively impacted his ability to maintain a positive relationship between daughter and mother, although it found that neither parent had tried to keep daughter from contacting the other. It also found that daughter had a strong bond with her maternal grandmother, as well as other close relatives in New Jersey. The court awarded sole legal and physical rights and responsibilities to mother. It established a parent-child contact schedule giving father contact with daughter during summer and Christmas holidays as well as one weekend a month in New Jersey.

On appeal, father argues that the court abused its discretion in awarding sole legal rights and responsibilities to mother. He also argues that the parent-child contact order fashioned by the court was contrary to public policy.

"The trial court has broad discretion in a custody matter, and we must affirm unless the discretion is erroneously exercised, or was exercised upon unfounded considerations or to an extent clearly unreasonable in light of the evidence." Myott v. Myott, 149 Vt. 573, 578 (1988) (quotation omitted). "We will uphold factual findings if supported by credible evidence, and the court's conclusions will stand if the factual findings support them." Spaulding v. Butler, 172 Vt. 467, 475 (2001) (quotation omitted). "We will, however, reverse if the court's findings are not supported by the evidence, or if its conclusions are not supported by the findings." Wright v. Kemp, 2019 VT 11, ¶ 19, 209 Vt. 476 (quotation omitted).

Father first claims that the court erred in considering evidence beyond the statutory factors, namely, the power dynamics of the parties' marriage relationship. This argument lacks merit. We have held that in awarding custody, "[t]he court must take into account all relevant evidence, including the factors found in 15 V.S.A. § 665(b)." Habecker v. Giard, 2003 VT 18, ¶ 10, 175 Vt. 489 (mem.). Contrary to father's claim, the court "was not limited to considering only those factors listed in 15 V.S.A. § 665; the court has discretion to consider other factors and also to rely 'upon its own common sense and experience in reaching a reasoned judgment as to the best interests of the child.' " Kitoko v. Salomao, 2019 VT 45, ¶ 20, 210 Vt. 383 (quoting Osmanagic v. Osmanagic, 2005 VT 37, ¶¶ 5-6, 178 Vt. 538 (mem.)). The court found father's behavior toward mother was relevant to his ability to meet daughter's future developmental needs as she started to develop her own interests, and to his ability to foster a positive relationship between daughter and mother. The court acted within its discretion in considering this evidence.

Father also challenges certain findings made by the court. He argues that the court's finding that neither parent tried to keep daughter from contacting the other is unsupported by the evidence, pointing to his testimony that in the spring of 2020, mother and daughter went to New Jersey for over a month and he had limited FaceTime contact with daughter during that time. However, father also testified that he agreed that mother could take daughter to New Jersey, and he did not provide evidence that the limited FaceTime contact was attributable to mother as opposed to some other reason. He further testified that when mother sought to return with daughter to New Jersey in the summer of 2020, he did not agree, and mother did not take daughter with her. He acknowledged that he did not expect to have longer conversations with daughter over FaceTime given her young age. For her part, mother stated that she did not deny

father access to daughter. In this context, we cannot say that the court's finding was clearly erroneous.

Father also challenges the court's finding that mother's lack of engagement with daughter's asthma treatment was likely due to her fear of conflict with father. Again, father has not demonstrated that this finding was clearly erroneous. Mother testified that when she asked to vaccinate daughter, father refused. Mother stated that she did not want to fight with him and decided to "let it go" for the time being, concluding that daughter would have to have the vaccinations before she entered kindergarten. Maternal grandmother testified similarly that mother was conflict-averse and would apologize and do what father wanted instead of confronting him. It was reasonable for the court to infer from this evidence that mother's approach to the asthma treatment was similarly driven at least in part by her desire to avoid conflict with father. See Lanfear v. Ruggerio, 2020 VT 84, ¶ 37, 213 Vt. 322 (explaining that family court may draw reasonable inferences from evidence presented); Kanaan v. Kanaan, 163 Vt. 402, 405 (1995) ("The reason the trial court is granted such wide deference on review is that it is in a unique position to assess the credibility of the witnesses and the weight of the evidence presented.").

Father next argues that the parental-rights-and-responsibilities award must be reversed because the court failed to adequately explain its decision. We disagree. The court discussed each of the best-interests factors. It explained that it was a close case and that parents were nearly equally situated as to most of the factors. However, it found that father's controlling behavior could interfere with his ability to meet daughter's future developmental needs, and that he was less disposed to foster a positive relationship between daughter and mother. It also found that daughter had an important bond with her maternal grandmother and other close relatives in New Jersey. In other words, the court appears to have concluded that the third, fifth, and seventh factors weighed in favor of mother. "When the parents cannot agree to divide or share parental rights and responsibilities, the court shall award parental rights and responsibilities primarily or solely to one parent." 15 V.S.A. § 665(a). The court had to designate a primary parent, and adequately explained its reasoning for choosing mother given the facts before it. See DeLeonardis v. Page, 2010 VT 52, ¶ 25, 188 Vt. 94 (concluding family court did not abuse its discretion where family court did not cite to § 665(b) factors but appeared to rely primarily on two factors and legislative policy); Harris v. Harris, 149 Vt. 410, 414 (1988) ("It is sufficient if the findings as a whole reflect that the trial court has taken the statutory factors into consideration, in so far as they are relevant, in reaching its decision." (quotation omitted)).

Finally, father contends that the parent-child contact schedule fashioned by the court contravenes the public policy expressed by the Legislature in 15 V.S.A. § 650, which states that "after parents have separated or dissolved their civil marriage, it is in the best interests of their minor child to have the opportunity for maximum continuing physical and emotional contact with both parents." We conclude that the court acted within its discretion in adopting the parent-child contact schedule proposed by mother. The court found, and father does not dispute, that it was not in daughter's best interests to continue with the alternating two-week schedule the parties had followed during the divorce proceeding. Having awarded sole custody to mother, who lived in New Jersey, it adopted a reasonable schedule that allowed father to have contact during summers and holidays, as well as one weekend a month in New Jersey if he chose. The schedule was supported by the court's findings, gave father substantial time with daughter, and was not contrary to § 650. See Bancroft v. Bancroft, 154 Vt. 442, 449 (1990) (holding that order giving father visitation rights that amounted to half of children's time on weekends and school vacations, and approximately twenty-five percent of their time overall, did not offend § 650); see

4

also <u>Lane v. Schenck</u>, 158 Vt. 489, 499 (1992) (explaining that § 650 "does not supersede the custodial parent's reasonable decision to relocate").

  <u>Affirmed</u>.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Harold E. Eaton, Jr., Associate Justice


_____
Nancy J. Waples, Associate Justice