VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      25-AP-232



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

FEBRUARY TERM,   2026

Jacob Johnson v. Kimberly Elmore\*     }     APPEALED FROM:
                                        }     Superior Court, Orleans Unit,
                                        }     Family Division
                                        }     CASE NO. 24-DM-02404
                                              Trial Judge: Justin P. Jiron

In the above-entitled cause, the Clerk will enter:

Mother appeals the court's award of sole legal and primary physical rights and responsibilities for the parties' two-year-old son to father. We affirm the court's custody decision, but remand for it to address mother's request for a name change.

In October 2024, father filed this action seeking custody of son, who was born in October 2023. Mother filed her own complaint four days later, which was consolidated with father's action. The court held a final hearing in May 2025 and issued a written order containing the following findings.

Father and mother both work as law enforcement officers for the State of Vermont. They met while attending the police academy in 2021. In the spring of 2023, they became engaged, and mother became pregnant with son. Mother experienced depression during and after her pregnancy and expressed a desire to move to Virginia or other states where family members lived. Father wanted to remain in Vermont, where he grew up. The parties' relationship deteriorated in the winter of 2024 after mother disclosed that she had a sexual encounter with another man the prior year. Mother moved out of the parties' home in April 2024.

The parties agreed to a 50/50 contact schedule with son and followed it without difficulty. Mother often prepared food for son and provided it to father. She made son's medical appointments, which both parents attended. Mother lived in a three-bedroom, two-bathroom home purchased by her parents. Father continued to reside in the home he had purchased with mother in 2022, which had three bedrooms and a big yard. Father ensured his home was safe for children.

In August 2024, father began dating a woman who also had a two-year-old child. He introduced his girlfriend to son in October. He offered to have mother meet his girlfriend, but

mother declined. During the same conversation, mother told father she wanted to move to Virginia with son.

When son was with father, father picked him up at 5:00 p.m. Son typically had a snack then played or went outside, followed by a bath at 6:30 p.m. Before bed, son had video calls with mother and father's parents. Father would read a book to son and lay with him until son fell asleep. Father would get him ready in the morning.

Father's girlfriend and her son moved in with father in January 2025. Son and father's girlfriend's son shared a room, and son had a good relationship with father's girlfriend.

Father arranged daycare for son in January 2025. The daycare teacher observed father and son to have a close and affectionate relationship. Father was attentive to son's needs, always had sufficient supplies for son, and was responsive when the teacher communicated to him about son. The daycare teacher had not met mother.

Both parents worked cooperatively to care for son and supported each other's relationship with son. They were able to civilly discuss issues regarding son's care and development. However, if awarded sole parental rights and responsibilities, mother expressed an intent to move with son to Virginia. Mother proposed a contact schedule giving father fourteen days every other month, which would require son to travel back and forth to Virginia. Father asked the court to maintain the current 50/50 schedule and award him sole parental rights and responsibilities.

In awarding custody, the court analyzed the factors set forth in 15 V.S.A. § 665(b). It found that the parents were equally situated with regard to factors one, two, three, and seven, and that the ninth factor did not apply. The court found that the fourth factor, "the quality of the child's adjustment to the child's present housing, school, and community and the potential effect of any change," weighed in favor of father because son had always lived in Vermont, was comfortable and happy in his current environment, and had little connection to his Virginia relatives. Id. § 665(b)(4). The court found that mother's proposed relocation would significantly reduce her income as well as son's time with father and would likely have a negative impact on son's relationship with father. The court also found that the fifth factor, "the ability and disposition of each parent to foster a positive relationship and frequent and continuing contact with the other parent," weighed in favor of father because father continued to support the 50/50 schedule while mother wanted to move with son to Virginia, which would severely disrupt father's relationship with son. Id. § 665(b)(5). The court found that mother's role as primary caregiver weighed slightly in her favor, but that son was very close to father as well. Id. § 665(b)(6). Finally, the court found that mother had historically demonstrated a greater ability to communicate and cooperate with father regarding son, though father was improving in this regard. Id. § 665(b)(8).

The court awarded father sole legal and primary physical rights and responsibilities. It explained its decision as follows:

> In particular the Court has considered the factor regarding support of the other parent's continuing relationship with [son]. [Father]'s ability in this regard significantly outweighs [mother]'s, since [mother] would remove [son] from Vermont if she had primary physical responsibility. This would drastically interfere with [father]'s contact and relationship with [son]. [Father], on the

other hand, is committed to ensuring [mother] has equal contact with [son] if he has primary physical responsibility.

The court ordered the parties to continue their 50/50 contact schedule. Mother appealed.

Mother argues that the court abused its discretion in awarding father primary parental rights and responsibilities based on her proposed relocation to Virginia because she indicated that she would not move if the court did not award her sole custody. "The trial court has broad discretion in a custody matter, and we must affirm unless the discretion is erroneously exercised, or was exercised upon unfounded considerations or to an extent clearly unreasonable in light of the evidence." Myott v. Myott, 149 Vt. 573, 578 (1988) (quotation omitted). "We will uphold factual findings if supported by credible evidence, and the court's conclusions will stand if the factual findings support them." Spaulding v. Butler, 172 Vt. 467, 475 (2001) (quotation omitted).

"The best interests of the child must be the court's paramount consideration in awarding custody." Habecker v. Giard, 2003 VT 18, ¶ 10, 175 Vt. 489 (mem.). The court must consider the factors set forth in § 665(b) as well as any other relevant evidence in assigning parental rights and responsibilities. Id. "Although relocation is not specifically listed as a factor, our case law makes clear that the family court should consider a party's proposed relocation when making a final order of parental rights and responsibilities." Paine v. Buffa, 2014 VT 10, ¶ 12, 195 Vt. 596. When, as here, "parents are almost equally situated with respect to the statutory factors set forth in § 665(b), the parties' proposed residences can become a dominant factor in the court's decision." Id. In such cases, the court should give the party who wants to move the choice of specifying the facts on which the court will base its decision. Id. "The party 'has the option of telling the court either that (1) she will move, so that any later relocation by [her] consistent with the proposed relocation will not be unanticipated, or (2) she has made no firm decision to move, so that any later relocation by [her] will be unanticipated.' " Id. (quoting Gazo v. Gazo, 166 Vt. 434, 442 (1997)). "If a party indicates that they will move, then the court must determine parental rights and responsibilities by comparing the children's proposed life in the new location with the proposed life with the nonrelocating parent." Gordon v. Fogell, 2025 VT 24, ¶ 12.

The court did not err in concluding that mother had made a firm decision to move in this case. Mother repeatedly indicated to father and to the court that she intended to move to Virginia if granted custody. She testified that she had gone through a physical and psychological evaluation, background check, and formal interview for the job she had been offered in Salem, Virginia. The job would pay less but the cost of living was lower, and it would give her more time off to be with son. She had already enrolled son with a pediatrician, pediatric dentist, and a Montessori school in Salem. She intended to live with her grandmother until she could find a house to buy. She proposed a 60/40 contact schedule and offered to pay $8600 for travel expenses to help father and to bring son to Vermont so father wouldn't have to take time off work. Taken together, this evidence shows that mother planned to move to Virginia. The court therefore did not err in basing its decision on her proposed relocation. See Paine, 2014 VT 10, ¶ 13 (upholding award of parental rights and responsibilities to father based largely on mother's proposed relocation where evidence showed mother intended to move, despite mother's statement that she would stay in Vermont if that was the only way to get custody).

This case is distinguishable from Duggento v. Longe, the case cited by mother. No. 24-AP-011 (Vt. Jun. 12, 2024) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo24-011.pdf. In Duggento, we

reversed and remanded the court's order transferring parental rights and responsibilities from mother to father based on the mother's proposed relocation, because the mother indicated that she would not move without the children and had in fact not moved, thereby removing the change in circumstances that would justify modification. Id. at *2-3; see also Wener v. Wener, 2016 VT 109, ¶ 29, 203 Vt. 582 (reversing order modifying custody on similar ground). Here, the court was tasked with assigning custody in the first instance and was not required to find a change in circumstances. Mother's statement that she would not move if not granted custody therefore does not undermine the basis for the court's decision given our holding in Duggento.

The court's award of sole legal and primary physical custody to father is supported by its findings. The court found that mother's proposed move would severely disrupt father's contact with son and negatively impact their relationship. Son was well-adjusted to his home and community in Vermont. He had spent little time in Virginia and there was no evidence of his relationship with mother's Virginia relatives. If son remained in Vermont, father supported the current schedule giving each parent equal time with son. These findings, along with the court's findings that father was equally capable of meeting son's financial and developmental needs and providing him with love and affection, support the court's determination that the proposed relocation would not be in son's best interests, and in turn its decision to award primary legal and physical rights and responsibilities to father. See Paine, 2014 VT 10, ¶ 14 (affirming award of legal custody to father under similar circumstances).

Mother argues that the court failed to explain why it awarded legal rights and responsibilities to father. The order makes clear, however, that the court assigned legal custody to father "for the same reason" that it assigned physical custody. Moreover, we have cautioned that "routine splitting of physical and legal rights and responsibilities can be unwise" absent some specific reason to do so. Chase v. Bowen, 2008 VT 12, ¶ 41, 183 Vt. 187. Where, as here, the court found that parents were equally situated with regard to their ability to make educational, medical, and other decisions for son, the court's decision to award both legal and physical custody to father was not a clear abuse of its discretion.

We further see no error in the court's finding that mother was less disposed to foster frequent and continuing contact with father, as evidenced by her proposed relocation. Mother's move to Virginia and proposed contact schedule would mean that instead of seeing father every few days, son would see him every other month. Meanwhile, father wanted to maintain the existing 50/50 schedule. The court could reasonably infer from this evidence that mother was less disposed to foster frequent contact between son and father. See Lanfear v. Ruggerio, 2020 VT 84, ¶ 37, 213 Vt. 322 (explaining that family court may draw reasonable inferences from evidence presented).

Mother argues that the court should have given greater weight to her role as primary caregiver. "Although a primary care provider finding is entitled to great weight, this does not create a rule that the primary custodian will be awarded custody as long as the parent is fit." Habecker, 2003 VT 18, ¶ 14 (quotation omitted). "Instead, the weight accorded to the primary care provider factor depends upon the quality of the relationship between the child and custodian, as well as the likely effect that a change of custodian will have on the child." Id. As noted above, the court found that this factor only slightly favored mother because both parents were involved in all aspects of caring for son. Mother does not challenge this finding, which supports the court's reasoning. Similarly, mother's greater ability to cooperate with father did not automatically trump all other factors. See Hazlett v. Toomin, 2011 VT 73, ¶ 13, 190 Vt. 563 (mem.) (explaining that ability to foster positive relationship is critical but not dispositive factor

in determining child's best interests). "Where, as here, the court's award of custody reflects its reasoned judgment in light of the record evidence, its decision may not be disturbed." LeBlanc v. LeBlanc, 2014 VT 65, ¶ 23, 197 Vt. 17. We therefore affirm the court's award of parental rights and responsibilities to father.

We agree with mother's claim, however, that the court erred in failing to address her request to change son's last name. See In re T.S., 144 Vt. 592, 594 (1984) (explaining that court abuses its discretion if it fails to exercise that discretion). In her complaint, as well as her answer to father's complaint, mother asked that son's last name be changed to Elmore-Johnson. See 15C V.S.A. § 114(c) (authorizing court to change name of child upon request of party to parentage proceeding). Although mother's testimony did not specifically address this request, there is no indication in the record that she had withdrawn it. We therefore remand for the court to amend its final order to address mother's request.

The court's order awarding parental rights and responsibilities to father is affirmed. The matter is remanded for the court to address mother's request for a name change.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Harold E. Eaton, Jr., Associate Justice


_____
Nancy J. Waples, Associate Justice

5